**Nos. 2014-1537, -1566**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

GLOBAL TRAFFIC TECHNOLOGIES LLC,

*Plaintiff-Appellee*,

v.

RODNEY K. MORGAN AND KM ENTERPRISES, INC.,

*Defendants-Appellants*,

AND

STC, INC.,

*Defendant-Appellant*.

Appeals from the United States District Court
for the District of Minnesota in Case No. 0:10-cv-04110-ADM-JJG,
Judge Ann D. Montgomery

**REPLY BRIEF OF DEFENDANT-APPELLANT STC, INC.**

ROBERT A. ARCAMONA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6000

LOUIS W. TOMPROS
ANANT K. SARASWAT
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Defendant-Appellant
STC, Inc.*

January 20, 2015

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellant STC, Inc. certifies the following:

1.     The full name of every party or *amicus* represented by us is:

STC, Inc.

2.     The names of the real party in interest represented by us is:

STC, Inc.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

WILMER CUTLER PICKERING HALE AND DORR LLP:  Robert A. Arcamona, Anant K. Saraswat, Louis W. Tompros.

HELLMUTH & JOHNSON:  Terrance C. Newby, Jonathan D. Jay (both formerly of Leffert Jay & Polglaze).

SHUMAKER & SIEFFERT, PA:  Nicholas S. Kuhlmann (formerly of Leffert Jay & Polglaze).

LEWIS, RICE & FINGERSH, L.C.:  Frank B. Janoski, Michael J. Hickey, Jerina D. Phillips.

Elizabeth L. Taylor

Dated:  January 20, 2015              */s/ Louis W. Tompros*                     
                                         LOUIS W. TOMPROS

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF AUTHORITIES ................................................................iv

INTRODUCTION ...............................................................................1

ARGUMENT ......................................................................................1

I.    THE DISTRICT COURT'S FAILURE TO CONSTRUE THE MEANS-
      PLUS-FUNCTION LIMITATIONS OF CLAIM 1 REQUIRES REVERSAL ...................1

      A.    No Jury Could Have Found Infringement Under The
            Correct Constructions..........................................................1

            1.    Wires cannot be the structure corresponding to the
                  "means for transmitting."...........................................2

            2.    A processor located on the vehicle cannot be the
                  "means, associated with the location, for receiving
                  the vehicle data."......................................................5

      B.    GTT's Waiver Argument Is Baseless ..................................7

II.   THE DISTRICT COURT'S FAILURE TO REQUIRE THE "MAPPING
      MEANS . . ." TO BE LOCATED AT THE INTERSECTION REQUIRES
      REVERSAL..................................................................................10

III.  THE DISTRICT COURT'S CONSTRUCTION OF "MAP OF ALLOWED
      APPROACHES" IN CLAIMS 1 AND 16 WAS INCORRECT ...................................11

      A.    STC Did Not Waive Its Claim Construction Argument .....................11

      B.    GTT's Arguments On the Merits Fail ................................13

IV.   THERE WAS NO EVIDENCE OF INFRINGEMENT OF CLAIM 16.........................17

      A.    There Was No Evidence Of Indirect Infringement .............................17

B.   STC Did Not Waive Its Challenge To Indirect Infringement ........................................................................20

C.   Testing Evidence Cannot Support The Direct Infringement Verdict ..........................................................23

D.   STC Did Not Waive Its Direct Infringement Challenge ....................24

V.   THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT WILLFUL INFRINGEMENT .........................................................................25

VI.   THE DAMAGES AWARD WAS IMPROPER ........................................27

A.   GTT Failed To Properly Mark The Opticom System ........................27

1.   GTT failed to properly mark as a matter of law. ....................27

2.   GTT failed to properly mark as a matter of fact. ....................29

B.   GTT's Expert Failed To Address Price Elasticity At Trial................30

CONCLUSION ....................................................................................31

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page

*Apple, Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ........................................................11

*Asyst Technologies, Inc. v. Empak, Inc.*,
   268 F.3d 1364 (Fed. Cir. 2001) ...................................................... 3-4

*Baran v. Medical Device Technologies, Inc.*,
   616 F.3d 1309 (Fed. Cir. 2010) ..........................................................2

*Bettcher Industries, Inc. v. Bunzl USA, Inc.*,
   661 F.3d 629 (Fed. Cir. 2011*)* ...........................................................8

*Biomedino, LLC v. Waters Technologies Corp.*,
   490 F.3d 946 (Fed. Cir. 2007) ........................................................2, 4

*Blackboard, Inc. v. Desire2Learn, Inc.*,
   574 F.3d 1371 (Fed. Cir. 2009) ..................................................12, 25

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
   381 F.3d 1371 (Fed. Cir. 2004) ....................................................9, 13

*Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac
   Solutions, P.C.*,
   482 F.3d 1347 (Fed. Cir. 2007) ..........................................................8

*Cohesive Technologies, Inc. v. Waters Corp.*,
   543 F.3d 1351 (Fed. Cir. 2008) ........................................................26

*Commil USA, LLC v. Cisco Systems, Inc.*,
   720 F.3d 1361 (Fed. Cir. 2013) ..................................................19, 20

*Conoco, Inc. v. Energy & Environmental International, L.C.*,
   460 F.3d 1349 (Fed. Cir. 2006) ..........................................................8

*Crystal Semiconductor Corp. v. TriTech Microelectronics
   International, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) ........................................................31

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)...................................................................................30

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ...........................................................4

*DSU Medical Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006) (en banc) .......................................18

*Embrex, Inc. v. Service Engineering Corp.*,
  216 F.3d 1343 (Fed. Cir. 2000) .........................................................24

*Funai Electric Co., Ltd. v. Daewoo Electronics Corp.*,
  616 F.3d 1357 (Fed. Cir. 2010) .........................................................29

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S. Ct. 2060 (2011)...............................................................17, 22

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) ................................................*passim*

*Kemco Sales, Inc. v. Control Papers Co., Inc.*,
  208 F.3d 1352 (Fed. Cir. 2000) .........................................................1

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999).........................................................................31

*Margolies v. McCleary, Inc.*,
  447 F.3d 1115 (8th Cir. 2006) .........................................................31

*Maxwell v. J. Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996) ....................................................28, 29

*Mettler-Toledo, Inc. v. B-Tek Scales, LLC*,
  671 F.3d 1291 (Fed. Cir. 2012) .............................................5, 7, 10

*Mirror Worlds, LLC v. Apple Inc.*,
  692 F.3d 1351 (Fed. Cir. 2012) .........................................................21

*Niemiec v. Union Pacific Railroad Co.*,
  449 F.3d 854 (8th Cir. 2006) .............................................................9

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
138 F.3d 1437 (Fed. Cir. 1998) ...........................................................28

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.,
Ltd.*, 521 F.3d 1351 (Fed. Cir. 2008) .............................................9, 13

*Playtex Products, Inc. v. Procter & Gamble Co.*,
400 F.3d 901 (Fed. Cir. 2005) ...............................................................4

*Saffran v. Johnson & Johnson*,
712 F.3d 549 (Fed. Cir. 2013) ..........................................................3, 6

*SanDisk Corp. v. Memorex Products, Inc.*,
415 F.3d 1278 (Fed. Cir. 2005) .............................................................8

*Sessions v. Romadka*,
145 U.S. 29 (1892)................................................................................28

*SynQor, Inc. v. Artesyn Technologies, Inc.*,
709 F.3d 1365 (Fed. Cir. 2013) ....................................................17, 18

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
No. 13-854, __ S. Ct. __, 2015 WL 232131 (Jan. 20, 2015) ..................2, 13, 26

*Thorner v. Sony Computer Entertainment America LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ...........................................................11

*Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*,
546 U.S. 394 (2006)..............................................................................21

*Utah Medical Productss, Inc. v. Graphic Controls Corp.*,
350 F.3d 1376 (Fed. Cir. 2003) .............................................................8

*Western Union Co. v. MoneyGram Payment Systems, Inc.*,
626 F.3d 1361 (Fed. Cir. 2010) ...........................................................25

## STATUTES AND RULES

35 U.S.C. § 287(a) ...............................................................................27

Fed. R. Evid. 702(c)..............................................................................30

# INTRODUCTION

In response to STC's arguments, GTT makes little effort to defend the district court's claim construction rulings and infringement verdict on the merits. Instead, apparently to deflect attention from the substantive problems with the district court's judgment, GTT primarily argues waiver. But GTT's waiver arguments have no basis in the record or in this Court's doctrine. Rather, the record is clear that the district court made numerous errors with respect to claim construction, infringement, and damages—each of which compels reversal.

# ARGUMENT

## I. THE DISTRICT COURT'S FAILURE TO CONSTRUE THE MEANS-PLUS-FUNCTION LIMITATIONS OF CLAIM 1 REQUIRES REVERSAL

The district court erred by failing to construe certain means-plus-function limitations of Claim 1, instead leaving construction to the jury. *See* STC Br. 33-36. This error requires reversal, because no reasonable jury could have found infringement under the correct claim construction. *See* STC Br. 36-41. STC did not waive its challenge to the district court's failure to construe these limitations.

### A. No Jury Could Have Found Infringement Under The Correct Constructions

A district court "must construe" means-plus-function limitations. *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000), a task that requires both "determin[ing] the claimed function" and "identify[ing] the

corresponding structure in the written description of the patent that performs that function." *Baran v. Medical Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010). The district court failed to perform this legal responsibility, and instead gave these limitations a "plain and ordinary meaning." A10-16. The Court must review the district court's failure de novo. *See Teva Pharma. USA, Inc. v. Sandoz, Inc.*, No. 13-854, Slip Op. at 11-12, __ S. Ct. __, 2015 WL 232131 (Jan. 20, 2015) (constructions amounting "solely to a determination of law" are reviewed de novo). Had the district court construed these limitations, no reasonable jury could have found infringement.

### 1. Wires cannot be the structure corresponding to the "means for transmitting."

The only structure for transmitting vehicle data disclosed in the patent is a *wireless* transmitter/antenna that transmits vehicle data from the vehicle to an intersection. STC Br. 37-39. GTT's arguments that wires can be the structure are meritless. GTT Br. 56-58.

*First*, GTT relies on the patent's statement that "vehicle data is transmitted via radio transmission or some other medium." GTT Br. 56-57 (citing A173, A185(3:53-55)). But the reference to "some other medium" cannot expand the scope of a claim to cover structures not disclosed in the specification. *See, e.g.*, *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 953 (Fed. Cir. 2007) ("[A] bare statement that known techniques or methods can be used does not disclose

structure."). GTT identifies nothing in the specification indicating that the "means for transmitting" can be a "conductive pathway, such as a wire or trace," as it argues. GTT Br. 57. The words "wire" and "trace" appear **nowhere in the patent**. The only "other medium" (apart from radio transmission) mentioned in the patent is the optical medium used in the prior art, and undisputedly not used in the STC product. A184(1:17-2:64).

*Second*, GTT relies on the testimony of its expert that lines in Figure 1 are wires that carry information between the GPS Receiver 40 and the Vehicle Processor 60 in the Vehicle Module 100. GTT Br. 57. But even assuming these unlabeled lines were a disclosure of using wires for **some other** function, this does not mean that the patent discloses using wires "for transmitting vehicle data." A "structure disclosed in the specification is [a] 'corresponding' structure **only** if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Saffran v. Johnson & Johnson*, 712 F.3d 549, 562 (Fed. Cir. 2013) (internal quotation marks omitted). GTT does not, and cannot, point to anything in the specification or the prosecution history that associates any wires with the function of "transmitting vehicle data." *See* GTT Br. 57-58. "The corresponding structure to a function set forth in a means-plus-function limitation must actually perform the recited function, not merely enable the pertinent structure to operate as intended[.]" *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d

1364, 1371 (Fed. Cir. 2001). It is the transmitter/antenna **only** that is actually disclosed as transmitting the data.[1]

GTT also wrongly argues that because the requirement that the specification "contain structure linked to claimed means" is "not a high bar," it need not identify an actual disclosure of wires as the means for transmitting. GTT Br. 57 (quoting *Biomedino*, 490 F.3d at 950). In *Biomedino*, the parties disputed whether, for **indefiniteness** purposes, a "box labeled 'Control' in [a figure] and a statement that the regeneration process may be 'controlled automatically by known differential pressure, valving and control equipment,'" was sufficient disclosure of corresponding structure for a "control means." 490 F.3d at 950. This Court held that the disclosure was insufficient, noting that "[w]hile it is true that the patentee need not disclose details of structures well known in the art, the specification must nonetheless disclose some structure." *Id.* at 951-952 (internal quotation marks

---

[1]    For this reason, neither *Dealertrack, Inc. v. Huber* nor *Playtex Products, Inc. v. Procter & Gamble Co.* support GTT's position. *See* GTT Br. 57. The issue here is not whether a patent's specification **can disclose** alternate structures; rather, it is whether the '398 patent **actually discloses** a wire as an alternate structure. In *Dealertrack*, there was no dispute that the specification of the patent in question disclosed multiple algorithms; the issue before the Court was whether the accused product needed to contain all of the algorithms to infringe. 674 F.3d 1315, 1329-1330 (Fed. Cir. 2012). Similarly, in *Playtex*, there was no dispute that the patent disclosed a structure for the "limiting means" at issue; rather, the issue was whether the structure corresponding to the term should be limited to that drawing, notwithstanding a broader description in the specification. 400 F.3d 901, 909 (Fed. Cir. 2005).

omitted).  Thus, *Biomedino* rejected what GTT seeks to do here—treat a vague reference to prior art as a disclosure of structure.

*Finally*, GTT contends that STC's expert, Scott Andrews, opined for invalidity purposes that "vehicle cabling" was a "means for transmitting the vehicle data."  GTT Br. 58.  But Mr. Andrews made this point only in the alternative—"[t]o the extent that it is determined" that Claim 1 covers a vehicle-based system—which STC consistently maintained was not the case.  A10375.  Neither STC nor Mr. Andrews agreed with GTT's argument that the patent disclosed any wired "means for transmitting."

Here, "the patentee chose to use means-plus-function language which limits it to the disclosed embodiments and equivalents."  *Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1296 (Fed. Cir. 2012).  Every embodiment disclosed in the '398 patent shows vehicle data being transmitted from a vehicle module to an intersection module using a wireless transmitter.  *See* A175(Fig. 1); A186(5:21-24, 6:6-9, 6:46-47); STC Br. 10-12 & n.1.  A wire is neither disclosed nor the equivalent of the disclosed wireless transmitter.

### 2.    A processor located on the vehicle cannot be the "means, associated with the location, for receiving the vehicle data."

The only disclosed structure for "receiving" the vehicle data in the '398 patent is the combination of the "receiving antenna" and "data receiver" in the *intersection module*.  A186(5:24-29); *see* STC Br. 39-41.  GTT claims that the

specification identifies the Processor 250 as the corresponding structure because it states that "Processor 250 compares the received vehicle data with the map of allowed approaches." GTT Br. 59 (citing A186(5:64-65)). But the word "received" in this sentence modifies the word "data"—it is not an indication of an action performed by the processor. That the Processor compares the "received" data does not suggest that the Processor is the receiver, particularly where the patent discloses an actual receiver—the "receiving antenna" and "data receiver."

GTT also claims that STC conceded at summary judgment that the Processor 250 was the corresponding structure. GTT Br. 59. Not so. STC argued that the patent "clearly shows that the 'means for receiving the vehicle data' corresponds to the structure identified as 'a data receiving antenna 210'" and that "[t]herefore, the Emtrac VCU processor *cannot* be 'means for receiving vehicle data' as a matter of law." A7106 (emphasis added). Even if the '398 patent had identified the Processor 250 as something that is *capable of* taking vehicle data as an input, what matters is whether the '398 patent "clearly links or associates" the Processor 250 to the function of "receiving the vehicle data"—which it does not. *Saffran*, 712 F.3d at 562.

GTT also argues that the '398 patent allows the "means, associated with the location, for receiving vehicle data" to be associated with more than one location, because the preamble of the claim refers to "a location" and "a" can mean more

than one.  GTT Br. 60.  But this is a non-sequitur.  The issue is not whether the words "a location" in the **preamble** of Claim 1 refer to one location or multiple locations.  GTT Br. 59-60.  The issue, rather, is whether "**the** location" in the "means . . . for receiving" limitation is a reference to just one of those locations, or multiple locations.  GTT identifies no case holding that the use of "the"—as opposed to "a" or "an"—can signify the plural.  Rather, this Court has repeatedly held that "the" refers to one specific item.  *See* STC Br. 40.

Finally, GTT argues that it is entitled to a "broad" interpretation of the term "associated with."  GTT Br. 60-61.  But as a means-plus-function claim, Claim 1 is limited to the disclosed embodiments in the patent, which all show a "receiving antenna" and "data receiver" *in the intersection module* as the structure for the "means, associated with the location, for receiving the vehicle data."  *See* A186(5:24-29); *Mettler-Toledo*, 671 F.3d at 1296.

## B.    GTT's Waiver Argument Is Baseless

STC expressly argued in its *Markman* brief and in its motion for reconsideration of the *Markman* order that "transmitting the vehicle data" was part of a means-plus-function limitation.  *See* STC Br. 17-18; A5178; A5755.  GTT faults STC for not asking the court to construe "means for transmitting the vehicle data" and "means, associated with the location, for receiving the vehicle data" at the *Markman* stage and for not seeking to modify the scheduling order.  GTT Br.

48-53.  But this Court has recognized that the "district court may engage in claim construction during various phases of litigation, not just in a *Markman* order." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006); *see Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1383 (Fed. Cir. 2003).

Here, the dispute regarding the construction of these limitations became apparent during expert discovery, ***after*** the *Markman* process had completed—as GTT does not contest.  *See* STC Br. 20; A19608; A19932-19937; A19974.  Once the dispute became apparent, STC repeatedly asked the court to construe them. *See* STC Br. 18-20 (describing STC's raising of claim construction issue at summary judgment and motion *in limine* stages).[2]

Because STC repeatedly raised the claim construction issue pre-trial, STC was not required to object to the court's jury instruction, as GTT contends.  GTT Br. 53-56.  Where a party's claim construction position "was previously made clear to the district court and the district court did not clearly indicate that it was

---

[2]      Because STC repeatedly raised claim construction with the district court prior to trial, the cases GTT cites in its brief at pp. 48-53 in support of waiver are inapplicable.  Only three—*Bettcher Industries, Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 640-641 (Fed. Cir. 2011*)*, *Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007), and *SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005)— deal with claim construction at all, and none address a situation where, as here, a party repeatedly sought pre-trial resolution of a claim construction dispute that became apparent after formal *Markman* proceedings.

open to changing its claim construction[,] [the party] need not have renewed [its] objections by reasserting them when jury instructions were given." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008). *Cf. Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1381 (Fed. Cir. 2004) ("When the claim construction is resolved pre-trial, and the patentee presented the same position in the *Markman* proceeding as is now pressed, a further objection to the district court's pre-trial ruling may indeed have been not only futile but unnecessary."). Moreover, STC ***did object*** to the district court's jury instruction. Prior to trial, STC filed a proposed jury instruction reflecting its claim construction position. A19531. After closing arguments, the judge invited the parties to discuss jury instructions, and STC's counsel reiterated STC's objection to the court's failure to construe the means-plus-function elements. A2866:23-2867:4; A2873:19-24. The court then expressly noted for the record that it considered STC's objections "timely made" and preserved. A2875:19-2876:19. STC then renewed its challenge to the jury instruction in its JMOL motion, which the district court denied. A20764; A28-29.

Moreover, even if this Court were to find that STC was required to object but failed to do so, the Court would still review the jury instructions for plain error under Eighth Circuit law. *See Niemiec v. Union Pac. R.R. Co.*, 449 F.3d 854, 858 (8th Cir. 2006). Given that a district court's legal responsibility to construe means-

plus-function terms and to resolve claim construction disputes were both well-established prior to this case, the court's "plain and ordinary meaning" instruction (A118) was plain error.

"The doctrine of waiver is limited in its application." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001). The doctrine "ensur[es] a clear presentation of the issue to be resolved, an adequate opportunity for response and evidentiary development by the opposing party, and a record reviewable by the appellate court that is properly crystallized around and responsive to the asserted argument." *Id.* at 1347 (internal quotation omitted). STC presented its position multiple times, GTT could and did respond, and this Court is capable of reviewing the issue. Thus, GTT's waiver argument fails.

## II.    THE DISTRICT COURT'S FAILURE TO REQUIRE THE "MAPPING MEANS . . ." TO BE LOCATED AT THE INTERSECTION REQUIRES REVERSAL

As GTT admits, "[i]n the preferred embodiment [of the '398 Patent], some components, such as the ***memory storing the map of allowed approaches***, are physically located at the intersection, while others are located on the vehicle." GTT Br. 3 (emphasis added). There is undisputedly no other location disclosed for the memory, in ***any*** embodiment. This is fatal to GTT's contention (GTT Br. 45-46) that the "mapping means" limitation of Claim 1 has no physical location requirement. *See Mettler-Toledo*, 671 F.3d at 1296.

GTT's argument that it is entitled to the "full scope" of the supposedly "broad" term "associated with" (GTT Br. 46-48) ignores that—read in the context of every embodiment disclosing the mapping means at the intersection—the term "associated with the location" means located *at* the intersection. *See, e.g.*, *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); A185(3:60-62); A186(6:57-61); A187(7:3-5, 8:7-13, 8:38-40); STC Br. 13.[3] Furthermore, the use of "*the* location" indicates an association with *one* location. Yet GTT's expert, Dr. Neuahauser, admitted that the memory containing the map in the EMTRAC System, which is located on the vehicle, was not associated with any specific intersection location. A1510:14-21.

## III. THE DISTRICT COURT'S CONSTRUCTION OF "MAP OF ALLOWED APPROACHES" IN CLAIMS 1 AND 16 WAS INCORRECT

### A. STC Did Not Waive Its Claim Construction Argument

GTT contends that STC "abandoned" its proposed construction of "preprogrammed map of routes to the intersection" in its claim construction briefing. GTT Br. 18-19. Not so. Other than replacing "routes" with the synonymous term "roadway paths," the construction in STC's briefing was identical to the STC's proposed construction in the Joint Claim Construction Statement. *Compare* A5124 *with* A5173. Moreover, the district court's *Markman*

---

[3]    GTT's reliance on *Apple, Inc. v. Motorola, Inc.* (GTT Br. 47) is misplaced because the word "associating" did not appear in the claim at issue, but rather in Apple's proposed construction. 757 F.3d 1286, 1304, 1306 (Fed. Cir. 2014).

order quoted STC's proposed construction containing the word "routes." A10. Thus, because the district court was aware of—and ruled on—STC's "routes" construction, there can be no waiver. *See Interactive Gift Express*, 256 F.3d at 1346; *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1377-1379 (Fed. Cir. 2009) (claim construction argument not waived where party "made its legal position with respect to the [disputed limitation] sufficiently clear to the trial court, and the trial court . . . made it clear that it rejected [that] position").

GTT also contends that STC failed to argue that the map could not include static detection zones. GTT Br. 18. But that is exactly what STC was arguing by use of the terms "route" and "roadway path." The concept of a "route" or "roadway path" excludes a static *region* like the "detection zones" of the EMTRAC System.

GTT next accuses STC of attempting to "add[] additional limitations" on appeal. GTT Br. 19. But STC is advancing the same position about the claim's scope that STC took below—that the "allowed approaches" must be "routes"—and that the "detection zones" of the EMTRAC System fall outside of that scope. STC Br. 43-46. GTT cites nothing to support its position that a party on appeal cannot make arguments about what falls within or outside a claim term's scope. To the contrary, this Court has held that waiver will not apply "to prevent a party from

clarifying or defending the original scope of its claim construction[.]" *Interactive Gift Express*, 256 F.3d at 1346.

Finally, GTT contends that STC waived its argument by not objecting to the court's jury instruction on claim construction. But as discussed above, because STC is presenting the same claim construction argument here that it presented and lost at the *Markman* stage, STC was not required to object to the instruction. *See O2 Micro*, 521 F.3d at 1359; *Cardiac Pacemakers*, 381 F.3d at 1381.

Additionally, GTT's waiver argument completely ignores STC's alternate argument that the "plain and ordinary meaning" construction ***itself*** excludes the EMTRAC System's "detection zones" from its scope. *See* STC Br. 45-46. Even if STC had waived the right to challenge the district court's "plain and ordinary meaning" construction—and it did not—the infringement verdict was still unsupported by substantial evidence, because the "plain and ordinary meaning" of "approaches" excludes detection zones.

## B. GTT's Arguments On the Merits Fail

GTT first contends that because Claim 16 states that the "map of allowed approaches comprises a plurality of preprogrammed allowed positions," the claim does not exclude or require a particular shape. GTT Br. 20-22. This is not a fact-based argument, *see Teva*, No. 13-854, Slip Op. at 11-12 (reviewing legal issues de novo), and is a red herring. STC has never argued that the particular ***shape*** of the

EMTRAC System's detection zones is what excludes them from the scope of "allowed approaches." Rather, what excludes them is that the detection zones represent fixed regions, rather than routes. *See* STC Br. 43-47.

GTT also contends that figure 4 of the patent shows that an "approach" can be a "static area." GTT Br. 21-22. But the description in the patent makes clear that figure 4 illustrates a vehicle traveling along an "approach ***path***" towards an intersection—not a static zone. A186-187(6:66-7:2) (emphasis added); STC Br. 44-45. The patent further clarifies that the "approach corridor" GTT refers to in its brief is ***not*** the "approach" itself, but rather is the region within which the system described in the patent will detect that the vehicle is ***traveling on*** the approach, which is a path. *See* A187(7:5-11) ("the position component of the vehicle data is determined within an error radius 410 . . . [t]hus, the total allowed approach corridor for the embodiment of FIG. 1 is represented by dashed line 480"). If the patentee had intended the claim to encompass regions, the claims could have used the term "corridors," rather than the term "approaches."

GTT's argument that there was sufficient evidence of infringement of this limitation (GTT Br. 22-24) depends on accepting GTT's flawed claim construction. For example, GTT makes much of the appearance of the word "approach" on two pages of the EMTRAC System product manual. GTT Br. 23 (citing A27309). But notably, the manual does not describe the contents of the

database as "approaches."  Rather, just as the patent distinguishes "approaches" from "approach corridors," *see* A187(7:5-11), the EMTRAC manual refers to "approach detection zones" and "detection zones [that] correspond to street approaches":

The EMTRAC priority control system utilizes real-time vehicle position data, a database of user-programmable intersection approach detection zones, and secure wireless telemetry to enable precise control of priority detection. Using the EMTRAC Systems Manager software, priority calls can be restricted to specific areas of intersection approach streets and to specific time intervals for each intersection approach.

By using an advanced GPS receiver, the EMTRAC vehicle equipment determines the vehicle's position, direction, and velocity to a high degree of accuracy. The rectangular intersection detection zones are user-definable for each vehicle, and may be combined or overlapped to handle curved roadways. Each detection zone has a particular intersection controller's priority request associated with it. As an EMTRAC-equipped vehicle approaches the intersection, the vehicle computer compares the position and direction of the approaching vehicle with pre-defined detection-zone data (stored in its memory) to determine if a priority control request should be transmitted.

EMTRAC Systems – Rev. 9/17/200

- OUTSIDE ATTORNEYS' EYES ONLY                                                   K

A27302

# Emergency Vehicle Installation

The EMTRAC emergency-vehicle equipment serves the following three main functions:

- Acquires the equipped vehicle's position, speed, and direction in real time. This function is performed by the combo GPS/UHF receiver/antenna, and the information is transferred through either Ethernet or serial cable to the EMTRAC Vehicle Computer Unit.

- Compares the vehicle's current position, speed, and direction to a set of pre-defined geographic detection zones (which correspond to street approaches) with EMTRAC-equipped intersections that are stored in its memory. If the vehicle computer determines the vehicle is within one of these pre-defined detection zones, has the proper heading, and is within a valid pre-programmed time window, it initiates a priority request.

- Communicates the priority request to the proper signalized intersection. This is achieved by secure, frequency-hopping spread spectrum radio transmissions generated by the FHSS transceiver and is sent by the combo GPS/UHF antenna. The encrypted vehicle transmission includes the vehicle ID number, priority request level, direction of desired passage through the intersection, and the intersection ID number for the detection zone.

The EMTRAC system performs all of these functions automatically, and the driver is not required to perform any action or input. Refer to Figure 1 for an illustration of the transmission process.

**The Emergency Vehicle Installation section contains the following topics:**

- *Vehicle Functional Block Diagram*
- *Necessary Skills, Tools, and Supplies*
- *Installing the Combo GPS/UHF Antenna*
- *Installing the EMTRAC Vehicle Computer Unit*

EMTRAC Systems – Rev. 9/17/2009                                                9

IDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY                          KME0000268

A27309

DTX 20

This distinction between "approaches" and "zones" is significant, and illustrative of the fundamental difference between the intersection-based solution of the patent, and the vehicle-based solution of the EMTRAC System.  In a vehicle-based system, the map must be a map of zones (which are rectangles in the EMTRAC

System) because the vehicle needs to know whether it is within a specific geographic region that permits it to obtain priority at a particular intersection. By contrast, in an intersection-based system like that of the patent, the intersection knows where it is geographically; what it needs to know is whether the vehicle is on a path moving toward it, away from it, or in some other direction. That is precisely why the claimed "map" is of "allowed approaches"—routes toward an intersection—rather than a map of "zones," "regions," or "corridors."

## IV.   THERE WAS NO EVIDENCE OF INFRINGEMENT OF CLAIM 16

### A.   There Was No Evidence Of Indirect Infringement

"Liability for induced or contributory infringement under § 271(b) or (c) requires 'knowledge that the induced acts constitute patent infringement[,]' . . . [including] actual 'knowledge of the existence of the patent that is infringed.'" *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1379 (Fed. Cir. 2013) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011)). None of the evidence GTT contends demonstrates STC's knowledge actually does so.

***First***, GTT selectively quotes the transcript at A1779-1780 to imply that Mr. Morgan told Mr. Cross of STC about the '398 patent after Mr. Morgan learned of it in 2004. GTT Br. 31. But what Mr. Morgan said was that he "went down and talked to Brad [Cross] about the ***equipment***," *i.e.* the EMTRAC System, not about the patent. A1779:24-1780:1 (emphasis added). GTT also claims there was

evidence that "Defendants 'knew a patent existed,'" GTT Br. 31 (quoting A1608), but this does not show that **STC** knew of the **'398 patent** specifically, as required for indirect infringement.

**Second**, GTT contends that certain "active steps" that STC took, such as writing manuals or source code, are evidence of indirect infringement because those acts lead to infringing acts by users. GTT Br. 34. But GTT misstates the law, and relies on the prior standard rejected in this Court's decision in *DSU* and the Supreme Court's decision in *Global-Tech*. "[T]he intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc). The accused indirect infringer must have "knowledge that the induced acts constitute patent infringement." *SynQor*, 709 F.3d at 1379. Furthermore, the notion that STC's use of some of "the same words" in its product manuals that appear in the '398 patent somehow shows intent to induce infringement is preposterous (GTT Br. 34); the EMTRAC System and the '398 patent both relate to traffic preemption, and it is only natural that STC and the patentee would use common terminology in the field.

**Third**, there was no evidence that STC was willfully blind to any alleged infringement. *See* STC Br. 49-50. GTT contends that Mr. Morgan's testimony that he and Mr. Cross "decided that [they] would not look at any patents" somehow

- 18 -

proves willful blindness.  GTT Br. 36 (citing A1608).  But taking Mr. Morgan's account in the light most favorable to GTT, it at most shows that STC chose not to conduct any patent search—a far cry from willful blindness.  As Mr. Cross testified, when he was designing the accused product in 2003 and 2004, he had not thought it necessary to search for possible competitors' patents because the accused product was a modification of the pre-existing system, and because STC did not have the resources for a patent search.  A2587:8-13; A1734:24-1735:10; STC Br. 49.  When Mr. Cross did learn of the '398 patent, he reasonably (and rightly) concluded that the EMTRAC System could not infringe because it was a vehicle-based system, rather than an intersection-based system.  A2583:20-2584:6; STC Br. 50.

"Under [this Court's] case law, it is clear that a good-faith belief of non-infringement is relevant evidence that tends to show that an accused inducer lacked the intent required to be held liable for induced infringement."  *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367-1368 (Fed. Cir. 2013).  Thus, in light of STC's good-faith belief and the lack of contrary evidence, the district court should have granted JMOL on induced infringement.  GTT misquotes *Commil* when it suggests in its brief that a good-faith belief in noninfringement "does not 'preclude[] a finding of induced infringement.'"  GTT Br. 35 (quoting *Commil*,

720 F.3d at 1369). The cited passage refers only to invalidity, not noninfringement. *Id.* at 1368.

*Finally*, GTT's distinction between a defense asserted in "good faith" and one not "asserted in bad faith" is nonsensical. GTT Br. 35-36. The district court could not have concluded that that STC's defenses were not "in bad faith" unless STC had a "good faith" defense.

### B.    STC Did Not Waive Its Challenge To Indirect Infringement

GTT argues that STC waived its challenge to indirect infringement because the Defendants' second JMOL motion did not explicitly mention the lack of evidence with respect to STC. GTT Br. 25-26. At the close of GTT's case, the Defendants moved under Fed. R. Civ. P. 50(a) for a judgment of noninfringement on "all infringement claims"—direct and indirect. A2152:20-23. Then, in their original JMOL motion regarding indirect infringement, the Defendants noted that "[t]he same analysis as applies to Mr. Morgan applies as well to the two corporate defendants. Specifically, the record fails to support a finding of specific intent on the part of either STC or KME to induce infringement or knowledge as to the alleged infringing nature of the Emtrac System." A20598 n.1. In their original JMOL motion on patent infringement issues, Defendants argued that "a verdict against any of the Defendants finding indirect infringement would be erroneous and contrary to the evidence." A20665 n.1. Subsequently, in their consolidated

JMOL motion, Defendants *twice* pointed out that STC, like Mr. Morgan, lacked any hint that the EMTRAC System could possibly infringe the '398 patent. *See* A20802 n.14 (noting the belief of STC's president, Mr. Brad Cross, that the patent and the EMTRAC System were "about as far apart as possible in operation technique"); A20806-20807 ("there is no evidence that Morgan (*or, for that matter, either of the corporate Defendants*) subjectively believed that the Emtrac system infringed GTT's patent") (emphasis added). Thus, both GTT and the district court were unquestionably made aware of STC's argument for lack of indirect infringement liability. There is no waiver. *See Interactive Gift Express*, 256 F.3d at 1347.

The Supreme Court's holding in *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006) does not compel a finding of waiver because here, unlike in *Unitherm*, STC *did* in fact raise sufficiency of the evidence in its post-verdict JMOL motion. *Mirror Worlds, LLC v. Apple Inc.* also does not compel a finding of waiver because *Mirror Worlds* dealt with arguments raised in a footnote in an opening brief on appeal, not in proceedings before the trial court. 692 F.3d 1351, 1358 (Fed. Cir. 2012).

Moreover, even if the Court were to find waiver, the Court has the discretion to overlook waiver in certain circumstances, including where "the issue involves a pure question of law and refusal to consider it would result in a miscarriage of

justice" and where "the proper resolution is beyond any doubt." *Interactive Gift Express*, 256 F.3d at 1345. For the reasons discussed above, both of these circumstances are present here. The controlling question is essentially a legal one—whether a company that believed in good faith that its products did not infringe—and the answer is clearly "no" based on this Court's settled law.

GTT also argues that STC somehow cannot challenge GTT's willful blindness theory, because STC did not discuss willful blindness it in its opening brief. GTT Br. 36. But STC argued that it could not be liable for indirect infringement, *see* STC Br. 49, an argument that necessarily means it was not willfully blind. Furthermore, STC specifically argued in is opening brief that "there is no evidence that STC had the requisite knowledge for indirect infringement." *Id.* This argument encompasses willful blindness to infringement because willful blindness itself includes a threshold requirement of knowledge. *See Global-Tech*, 131 S. Ct. at 2070-2071. Willful blindness requires (at the very least) knowledge of sufficient facts to cause a "subjective[] belie[f]" in a high probability of infringement. *See id.* at 2071.

In its opening brief, STC expressly argued that STC not only had no knowledge of the patent prior to 2010, but had no reason to know of the patent prior to 2010. STC Br. 49. Furthermore, STC expressly argued that once STC learned of the patent, it believed in good faith that it did not infringe based on Mr.

Cross's comparison of the patent with the EMTRAC System, and that this good-faith belief was itself sufficient to defeat liability for indirect infringement. STC Br. 50. GTT's argument that STC has somehow waived a challenge to "willful blindness" is therefore meritless.

## C. Testing Evidence Cannot Support The Direct Infringement Verdict

GTT offered no evidence at trial to show that STC itself ever performed the method of Claim 16, nor could it point to any such evidence in response to STC's JMOL motion. *See* STC Br. 47-48. Furthermore, the district court did not even *mention* direct infringement by STC at all, much less any evidence that STC performed claim 16, in denying STC's JMOL motion. Thus, GTT's direct infringement argument cannot salvage the verdict. *See* STC Br. 48.

Moreover, the supposed "circumstantial evidence" of STC's direct infringement that GTT identifies is not substantial evidence of infringement. GTT Br. 33. GTT does not even attempt to explain how writing code, maintaining a website, manufacturing components of the EMTRAC System, or providing customer support resulted in STC performing all the steps of method claim 16, as required for infringement. GTT asserts that STC tested the EMTRAC System— but points to no evidence that STC's testing of the system resulted in STC performing all steps of the method, including, for example, the requirement of actually "allowing the vehicle to preempt" an intersection's traffic signals. A188;

GTT Br. 38.  Finally, GTT's assertion that STC "never so much as suggested that it had never operated the EMTRAC System" (GTT Br. 38) turns the burden of proof on its head.  It was GTT's burden first to show that STC infringed—not STC's burden to show that it did not.

Even if the Court could find that STC directly infringed Claim 16 by testing certain systems, the jury's damages award must be vacated in light of STC's noninfringement of Claim 1 and lack of indirect infringement of Claim 16.  At trial, GTT did not attempt to apportion damages between claims or between direct and indirect infringement.  And the jury's award cannot account for direct infringement of Claim 16 alone due to testing because the question on the jury verdict form asked the jury to award damages based on "Defendants' *sale* of infringing products.  A171 (emphasis added).  Thus, if only direct infringement of Claim 16 is upheld, damages must be vacated.  *See, e.g.*, *Embrex, Inc. v. Service Eng'g Corp.*, 216 F.3d 1343, 1349-1350 (Fed. Cir. 2000) (vacating damages award where direct infringement of method claim formed basis for liability, with lack of evidence that testing formed basis for damages).

### D.    STC Did Not Waive Its Direct Infringement Challenge

STC did not waive its challenge to the direct infringement verdict, as GTT contends.  GTT Br. 27-28.  At the close of GTT's case, STC moved under Fed. R. Civ. P. 50(a) for a judgment of noninfringement on "all infringement claims,"

which plainly included direct infringement, and GTT's response included

arguments regarding direct infringement of claim 16.  A2152:20-23; A20981-

20983.  "[E]ven a cursory motion suffices to preserve an issue on JMOL so long as

it 'serves the purposes of Rule 50(a), *i.e.*, to alert the court to the party's legal

position and to put the opposing party on notice of the moving party's position as

to the insufficiency of the evidence.'"  *Western Union Co. v. MoneyGram Payment*

*Sys., Inc.*, 626 F.3d 1361, 1367 (Fed. Cir. 2010) (quoting *Blackboard*, 574 F.3d at

1379-1380).  STC's motion satisfied these requirements.

## V.    THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT WILLFUL INFRINGEMENT

STC did not learn of the '398 patent until 2010, and when it became aware,

it reasonably believed that the EMTRAC System did not infringe.  *See* STC Br. 25,

49-51.  GTT faults Mr. Cross for comparing the EMTRAC System to the

embodiments of the patent because, in its view, a "reasonable litigant" would not

compare an accused product with an embodiment.  GTT Br. 71.  Preliminarily, Mr.

Cross is not a lawyer, and at the time he first learned of the patent in 2010, STC

was not a "litigant."  But in any event, given this Court's law on the construction

of means-plus-function terms, it was perfectly reasonable to compare the

EMTRAC System with the embodiments in the '398 patent in defending against

Claim 1.  To the extent the district court believed that some of STC's claim

construction arguments were "dubious," that view receives no deference on appeal,

as both legal issues related to claim construction and the objective prong of willfulness are reviewed *de novo*. *Teva*, No. 13-854, Slip Op. at 11-12. Thus, claim construction was at a minimum a "sufficiently close question to foreclose a finding of willfulness." *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 n.4 (Fed. Cir. 2008). Moreover, as noted above, GTT's attempt to distinguish between arguments made in "good faith" and arguments not made in "bad faith" defies logic. *See* GTT Br. 71.

Moreover, as explained *supra* at 19, STC did not believe it infringed in part because the accused version of the EMTRAC System was an upgrade of the previous system—a system itself covered by U.S. Pat. No. 4,914,434, issued to Mr. Cross as a co-inventor. A2489:4-8; A30001. The United States Patent Office instituted *ex parte* re-examination of the '398 Patent in light of nine references, including the '434 Patent. *See* A36021-36048.

Finally, GTT's claim of waiver is wrong. GTT's brief incorrectly states that STC's willful infringement argument "is contained in a single cryptic sentence in its opening brief." GTT Br. 70. In reality, STC presented a detailed argument on willfulness that cross-referenced its earlier factual presentation, and specifically noted that it did not believe it infringed. *See, e.g.*, STC Br. 51.

## VI. THE DAMAGES AWARD WAS IMPROPER

### A. GTT Failed To Properly Mark The Opticom System

The marking statute permits marking a patented article's packaging as an alternative only "when, from the character of the article, [marking the article] can not be done." 35 U.S.C. § 287(a). GTT's marking practice failed to satisfy § 287 for two reasons.

#### 1. GTT failed to properly mark as a matter of law.

The Court should affirmatively hold that where a patented article displays non-patent markings or printing and is physically capable of being marked with patent information, then marking a patented article's package is not sufficient to satisfy § 287. *See* STC Br. 53-54. Such a holding would further the statute's purpose of giving notice to the public and would comport with its text. *See* STC Br. 54-55.

GTT argues that this reading of § 287 will limit a patentee's flexibility in determining its own marking practices. *See* GTT Br. 74. But § 287 does not give a patentee unfettered discretion. Rather, § 287 makes clear that a patentee may mark a product's packaging, rather than the product itself, ***if and only if*** an article's "character" demonstrates that marking the article "can not be done." 35 U.S.C. § 287(a).

GTT's argument relies on a misreading of the Supreme Court's decision in *Sessions v. Romadka*, 145 U.S. 29 (1892), which concerned the predecessor to § 287, Rev. St. § 4900. *See* GTT Br. at 76. In that case, the patentee did not mark small "spring laches" due the difficulty of marking them, and instead marked the packaging. *Sessions,* 145 U.S. at 49-50. The Court concluded that "[i]t is not altogether clear that the stamp could not have been made upon the smaller sizes; but, in a doubtful case, something must be left to the judgment of the patentee." *Id.* at 50. The "judgment" referred to in *Sessions* concerned **whether it was physically possible** "in a doubtful case" to legibly mark the small spring latches. Nowhere did the Court imply that alternative marking was appropriate where marking a patented article could easily and clearly be done—as GTT's own executive testified was the case with respect to the Opticom System. A1997:20-23; A1994:8-1995:18.

None of the decisions from this Court that GTT relies on dealt with § 287's straightforward statement that marking a product's packaging is appropriate when marking the article "can not be done." *See* GTT Br. 74-75 (citing *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446-1447 (Fed. Cir. 1998) (remanding for further fact-finding regarding whether substantially all copies of article were marked); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-1112 (Fed. Cir. 1996) (considering whether licensee's failure to mark all copies of article was a marking

violation); *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1374-1375 (Fed. Cir. 2010) (similar).

### 2.    GTT failed to properly mark as a matter of fact.

GTT's marking was improper even under a totality of the circumstances approach to § 287.  Contrary to GTT's claim that a "complete absence of probative facts" standard applies, this Court reviews application of § 287 for substantial evidence.  *Compare* GTT Br. 77, *with Maxwell*, 86 F.3d at 1111-1112.

GTT claims that marking the packaging was justified because some of the system's components could be hidden from public view.  *See* GTT Br. 78.  But that does not explain why GTT failed to mark *any* of the system components, including those visible to the public.  *See* STC Br. 55-58.  Next, GTT wrongly claims that marking the system's packaging was appropriate because the "only time" the system "is really together is when it is shipped from the manufacturer."  GTT Br. 79.  This justification presumes § 287 demands patent markings to appear on each and every component of a patented system and together in a single location.  Section 287 has no such requirement, nor does GTT attempt to justify such an interpretation.  GTT also argues that Mr. VanDerBosch provided evidence of "industry custom," GTT Br. 79, but this is also incorrect.  All Mr. VanDerBosch said was that the ***Opticom System itself***—not any other comparable product—was

always marked in a particular way (which violated § 287). *See* A1978:24-1980:8; STC Br. 59-60.[4]

### B.    GTT's Expert Failed To Address Price Elasticity At Trial

Price elasticity is fundamental to a price erosion analysis. *See* STC Br. 63-64. But *at trial*, GTT's damages expert, Mr. Donald Gorowsky, failed to address price elasticity when determining damages due to price erosion. This made his methodology—as reflected in his testimony—unreliable.

GTT contends that Mr. Gorowsky's expert report can save his faulty testimony and that his "testimony at trial mirrored his report." *See* GTT Br. 69. But GTT never sought to admit Mr. Gorowsky's expert report into evidence at trial, and GTT does not cite *any* statement by Mr. Gorowsky at trial relevant to price elasticity.

It is an expert's in-court testimony that is relevant under Rule 702, not non-evidence such as an expert report. Rule 702 seeks to ensure that "*testimony* is the product of reliable principles and methods." Fed. R. Evid. 702(c) (emphasis added). A "trial judge must ensure that any and all scientific *testimony or evidence admitted* is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (emphasis added). District courts must be

---

[4]    GTT also mentions certain "practical considerations" that it claims courts should consider. *See* GTT Br. 75-76. But none of these considerations are drawn from this Court's law, and GTT does not even attempt to explain how they might apply in this case.

"certain that an expert . . . employs *in the courtroom* the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (emphasis added).

Because price elasticity is a necessary component of a price erosion damages theory, Mr. Gorowsky's failure to account for price elasticity made his testimony unfit for jury consideration. *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1359-1361 (Fed. Cir. 2001) (affirming denial of damages for price erosion where there was no evidence of a price elasticity analysis); *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1121 (8th Cir. 2006) (stating that abuse of discretion may exist where a "methodological basis for the [expert] testimony is fundamentally unreliable"). Thus, the damages award must be vacated.

## CONCLUSION

The Court should reverse the judgment of the district court and direct judgment of noninfringement in favor of STC.

Respectfully submitted,

*/s/ Louis W. Tompros*
LOUIS W. TOMPROS
ANANT K. SARASWAT
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109

(617) 526-6000

Robert A. Arcamona
Wilmer Cutler Pickering
   Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6000

*Attorneys for Defendant-Appellant
STC, Inc.*

January 20, 2015

## CERTIFICATE OF SERVICE

I hereby certify that, on this 20 day of January, 2015, I filed the foregoing

Brief of Defendant-Appellant STC, Inc. with the Clerk of the United States Court

of Appeals for the Federal Circuit via the CM/ECF system, which will send notice

of such filing to all registered CM/ECF users.


January 20, 2015                          */s/ Louis W. Tompros*
                                          LOUIS W. TOMPROS
                                          WILMER CUTLER PICKERING
                                             HALE AND DORR LLP
                                          60 State Street
                                          Boston, MA  02109
                                          (617) 526-6000

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(b).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 6,975 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


January 20, 2015                          */s/ Louis W. Tompros*
                                          LOUIS W. TOMPROS
                                          WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                          60 State Street
                                          Boston, MA  02109
                                          (617) 526-6000