Nos. 2014-1537, -1566

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

GLOBAL TRAFFIC TECHNOLOGIES LLC,

*Plaintiff-Appellee*,

v.

RODNEY K. MORGAN AND KM ENTERPRISES, INC.,

*Defendants-Appellants*,

AND

STC, INC.,

*Defendant-Appellant*.

Appeals from the United States District Court
for the District of Minnesota in Case No. 0:10-cv-04110-ADM-JJG,
Judge Ann D. Montgomery

## DEFENDANT-APPELLANT STC, INC.'S COMBINED PETITION FOR
## PANEL REHEARING AND REHEARING EN BANC

ROBERT A. ARCAMONA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6000

LOUIS W. TOMPROS
ANANT K. SARASWAT
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Defendant-Appellant
STC, Inc.*

July 6, 2015

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellant STC, Inc. certifies the following:

1.  The full name of every party or *amicus* represented by us is:

    STC, Inc.

2.  The names of the real party in interest represented by us is:

    STC, Inc.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None.

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    WILMER CUTLER PICKERING HALE AND DORR LLP:  Robert A. Arcamona, Anant K. Saraswat, Louis W. Tompros.

    HELLMUTH & JOHNSON:  Terrance C. Newby, Jonathan D. Jay (both formerly of Leffert Jay & Polglaze).

    SHUMAKER & SIEFFERT, PA:  Nicholas S. Kuhlmann (formerly of Leffert Jay & Polglaze).

    LEWIS, RICE & FINGERSH, L.C.:  Frank B. Janoski, Michael J. Hickey, Jerina D. Phillips.

    Elizabeth L. Taylor

Dated:  July 6, 2015                    */s/ Louis W. Tompros*
                                        LOUIS W. TOMPROS

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................i

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF COUNSEL ................................................................1

BACKGROUND .................................................................................2

ARGUMENT ......................................................................................6

I.    THE PANEL ERRED BY NOT ADDRESSING—AND REVERSING—
      THE DISTRICT COURT'S CONSTRUCTION OF THE MEANS-PLUS-
      FUNCTION TERMS IN CLAIM 1 AS "PLAIN AND ORDINARY
      MEANING," AND ORDERING A NEW TRIAL ON DAMAGES. ..............................6

      A.    STC Expressly Argued that Reversal of Claim 1
            Required a New Trial on Damages. ......................................6

      B.    The District Court's Construction of Means-Plus-
            Function Terms as "plain and ordinary meaning" Should
            Have Been Reversed. ...........................................................9

II.   THE PANEL ERRED BY NOT ADDRESSING THE MERITS OF STC'S
      CLAIM CONSTRUCTION ARGUMENT FOR "MAP OF ALLOWED
      APPROACHES." ...........................................................................11

III.  THE PANEL MISCONSTRUED "CAN NOT BE DONE" IN 35 U.S.C.
      § 287(A). ...................................................................................13

CONCLUSION ..................................................................................15

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Accentra, Inc. v. Staples, Inc.*,
  500 F. App'x 922 (Fed. Cir. 2013) ....................................................................9

*American Medical Systems, Inc. v. Medical Engineering Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993) ..........................................................................15

*Baran v. Medical Device Technologies, Inc.*,
  616 F.3d 1309 (Fed. Cir. 2010) ........................................................................9

*Blackboard, Inc. v. Desire2Learn, Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009) ......................................................................13

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ....................................................................1, 9

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) ..................................................................1, 12

*Mettler-Toledo, Inc. v. B-Tek Scales, LLC*,
  671 F.3d 1291 (Fed. Cir. 2012) ......................................................................10

*NTP, Inc. v. Research in Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) ....................................................................1, 9

*O2 Micro International Ltd. v. Beyond Innovation Technology Co., Ltd.*,
  521 F.3d (Fed. Cir. 2008) ...............................................................................10

*Sessions v. Romadka*,
  145 U.S. 29, 12 S. Ct. 799 (1892)..........................................................1, 14, 15

*Verizon Services Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007) ....................................................................1, 8

## STATUTES AND RULES

35 U.S.C. § 287(a) .........................................................................................passim

Fed. R. Evid. 702 ..................................................................................................5

## OTHER AUTHORITIES

U.S. Patent No. 128,925............................................................................14

## STATEMENT OF COUNSEL

Based on my professional judgment, I believe the panel decision is contrary to the following decision of the Supreme Court of the United States and the precedents of this Court:  *Sessions v. Romadka*, 12 S. Ct. 799 (1892); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005); *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323 (Fed. Cir. 2001).

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:  (1) Where a jury finds infringement of multiple claims and does not apportion damages among them, does reversal on one of those claims require vacating the damages award?; and (2) Does the patent marking statute, 35 U.S.C. § 287(a), which permits marking an article's package only when marking the article itself "can not be done," permit marking a patented system's packaging when "there is physical space on [the] component[s]" of the patented system themselves?

Dated:  July 6, 2015                    /s/ *Louis W. Tompros*
                                        Louis W. Tompros
                                        *Counsel of Record for Appellant STC, Inc.*

The panel's opinion includes three critical errors:

(1) It incorrectly stated that "STC does not contend that the number of claims infringed impacts the damages award, making an analysis of claim 1 and its claim terms unnecessary," Op. 8—though STC did and does contend exactly that;

(2) It incorrectly stated that "following the claim construction order, STC never argued that the district court failed to address what they now claim is a fundamental dispute between the parties as to whether the 'map of allowed approaches' requires movement," Op. 12—though STC did exactly that; and

(3) Notwithstanding 35 U.S.C. § 287(a)'s requirement that a patented article itself, not its packaging, be marked unless "this can not be done," the panel expressly rejected STC's argument that "if there is physical space on any component of a patented system, the patentee must mark that component to comply with the marking statute," Op. 17.

STC respectfully requests that the Court grant panel rehearing or, alternatively, rehearing *en banc*, to correct these errors and reverse the district court's judgement or, at minimum, expressly vacate the damages award.

## BACKGROUND

GTT sued STC and its codefendants, Rodney K. Morgan ("Morgan") and KM Enterprises, Inc. ("KME"), for infringement of U.S. Patent No. 5,539,398 ("the '398 patent"). Op. 2. The '398 patent describes an ***intersection-based*** traffic

preemption system. "In the disclosed invention each vehicle was equipped with a GPS receiver and a processor module to generate 'navigational vehicle data, such as position, heading and velocity.'" Op. 3 (citing '398 patent (A185(3:51-53))). "Each intersection was equipped with a module that received the navigational vehicle data, determined if the vehicle was approaching that intersection, and decided whether to preempt the normal traffic signal programming." *Id.* As Figure 1 shows, in the patented invention, a "vehicle module 100 processed the GPS data and transmitted it 'via transmitter 80 and antenna 101 to the intersection module 200. . . . The intersection module 200 received the data via receiver antenna 210.'" Op. 4-5 (citations omitted); *see also* STC Br. 10-12; A175. Every embodiment in the patent discloses **wireless** transmission of vehicle data from the vehicle to an intersection. *See* STC Br. 10-11.

GTT sells the "Opticom" traffic preemption system. It was not disputed that this system embodies at least one claim of the '398 patent. Op. 16. GTT does not mark any component of the Opticom system. Instead, it marks only its packaging. *Id.* GTT's own executive admitted at trial that there is ample space to place patent markings on the physical components and that doing so would not interfere with their operation. *See* A1994:8-1995:18; A1997:20-23; STC Br. 58.

STC manufactures components for the EMTRAC Priority Management System ("EMTRAC System"), which, in contrast to the '398 patent and the

Opticom system, is a ***vehicle-based*** system.  As the EMTRAC System manual explains, "the vehicle computer compares the position and direction of the approaching vehicle with pre-defined detection-zone data (stored in its memory) to determine if a priority control request should be transmitted."  A5472.  A priority request is sent from the vehicle to an intersection to change a traffic signal as needed to allow the vehicle to pass through.  A2531:6-20.  All of the processing that leads to the decision to transmit the priority request takes place on the vehicle, and the intersection has no role in it.

At trial, GTT asserted independent claims 1 and 16, and various claims depending from them.  Claim 1 is an apparatus claim in means-plus-function form that includes the limitations: (1) "means for transmitting the vehicle data"; and (2) "means, associated with the location, for receiving the vehicle data." A188(9:26-42).  Claim 16 is a method claim directed to a "traffic control preemption method" that largely tracks the system of claim 1, including the requirement of "providing a map of allowed approaches."  A188(10:42-63).

At the *Markman* stage, STC asked the court to construe the "map of allowed approaches" limitation of claims 1 and 16 as "preprogrammed ***map of routes to the intersection*** where the traffic signal that is to be preempted is located, said map being stored at the intersection."  A5124 (emphasis added).  The district court declined to adopt this construction.  STC also asked the court to construe

- 4 -

"transmitting the vehicle data" as used in claim 1, and pointed out that the term was part of a means-plus-function term limitation and that the only structure disclosed for transmitting the data was a wireless link. A5178. After the district court construed this means-plus-function term (and others) as "plain and ordinary meaning," STC sought permission to file a motion for reconsideration, again pointing out that the term appeared as part of a means-plus-function limitation, but the court denied this request. A10-16; A5755; A5792-93.

Following trial, the jury returned a verdict finding all asserted claims infringed. A168-69. The jury awarded $5,052,118 in damages "because of Defendants' sale of infringing products," but it did not apportion damages among claims. A171. On appeal, STC challenged the infringement verdict based in part on the construction of "map of allowed approaches." *See* STC Br. 43-47. STC also appealed the infringement verdict for claim 1 based on the court's failure to construe the "means for transmitting" and "means . . . for receiving" limitations. *Id.* 33-43. STC also challenged damages on marking grounds. *Id.* 52-63.[1]

The panel found STC's arguments related to "map of allowed approaches" waived as not having been raised before the district court. Op. 9-12. Specifically,

---

[1]     STC also challenged the sufficiency of the evidence that STC itself either performed or induced others to perform the method of claim 16, STC Br. 47-51, the jury's willfulness finding, *id.* 51-52, and the damages award on Fed. R. Evid. 702 grounds, *id.* 63-67.

it concluded that STC "never made its directionality argument before the district court," either before or "following the claim construction order." *Id.* at 12. The panel did not address the merits of STC's claim construction argument. The panel further held that it was not necessary to reach STC's arguments with respect to claim 1, because it believed that "STC does not contend that the number of claims infringed impacts the damages award, making an analysis of claim 1 and its claim terms unnecessary." *Id.* at 8. Finally, the panel held that even though GTT physically ***could*** mark the Opticom system, it was nevertheless entitled under the marking statute to mark only the packaging. *Id.* at 16-19.

## ARGUMENT

### I. THE PANEL ERRED BY NOT ADDRESSING—AND REVERSING—THE DISTRICT COURT'S CONSTRUCTION OF THE MEANS-PLUS-FUNCTION TERMS IN CLAIM 1 AS "PLAIN AND ORDINARY MEANING," AND ORDERING A NEW TRIAL ON DAMAGES.

#### A. STC Expressly Argued that Reversal of Claim 1 Required a New Trial on Damages.

The panel concluded that "an analysis of claim 1 and its terms was unnecessary" because "STC does not contend that the number of claims infringed impacts the damages award." Op. 8. Respectfully, however, STC did make ***exactly that*** contention in its briefing and at oral argument, and the panel appears to have overlooked it.

In its reply brief STC stated that "[e]ven if the Court could find that STC

directly infringed Claim 16 by testing certain systems, ***the jury's damages award must be vacated in light of STC's noninfringement of Claim 1*** and lack of indirect infringement of claim 16." STC Reply 24 (emphasis added). STC further noted that "[a]t trial, ***GTT did not attempt to apportion damages between claims*** or between direct and indirect infringement." *Id.* (emphasis added). Moreover, in its opening brief, STC identified numerous errors, including errors relevant only to claim 1, and argued expressly that "***each*** of [those errors] requires reversal." STC Br. 30 (emphasis added). Thus, contrary to the panel's opinion, STC did in its brief "contend that the number of claims infringed impacts the damages award." Op. 8.

The panel also stated, citing oral argument by STC's counsel, that "STC recognizes that[] our analysis of claim 16 is potentially dispositive of its challenge to the jury's infringement verdict." Op. 7 (citing oral arg. at 0:09 ("I would like to start with one that is case dispositive, and that is the construction of 'map of allowed approaches.'")). But that statement was plainly not intended—and could not reasonably have been understood—as a waiver by STC of its argument that infringement of claim 16 alone could not support the damages award. Rather, because "map of allowed approaches" appeared in all asserted claims, ***reversal*** of the district court's claim construction would be "dispositive" of all infringement issues—rendering all other issues in the case moot. STC in no way waived all of

its other arguments by arguing that the construction of "map of allowed approaches" was "case dispositive" *if reversed*.  In fact, the panel itself appeared to recognize that *affirmance* of "map of allowed approaches" was not case dispositive—because, after deciding the "map of allowed approaches" construction, the panel (rightly) went on to address infringement, willfulness, marking, price elasticity, and Morgan's personal liability.  *See* Op. 12-23.

STC's counsel also expressly argued that the reversal of the infringement verdict with respect to *claim 1* would require vacatur of the damages award and a new trial: "The means plus function issue resolves claim 1 clearly.  *And that alone requires a new trial because the damages award was based on the combination*." Oral Arg. at 12:03 (emphasis added).  Tellingly, GTT's counsel did not dispute in his responsive argument that reversal of claim 1 required, at minimum, a new trial on damages.

The argument that STC made—that a reversal of the infringement verdict for claim 1 required vacatur of the damages award—is fully supported by law.  There is no dispute that the jury did not apportion damages among the claims that it found infringed.  *See* A171 (verdict form).  Where a jury returns a general verdict finding infringement of multiple claims but does not apportion damages between them, reversal with respect to one claim requires vacatur of the damages award. *See*, *e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310

(Fed. Cir. 2007) ("In a situation—such as this one—where the jury rendered a single verdict on damages, without breaking down the damages attributable to each patent, the normal rule would require a new trial as to damages."); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1262 (Fed. Cir. 2014) (vacating damages award where some claims found invalid); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1325-26 (Fed. Cir. 2005) (remanding on damages following partial reversal of general verdict); *Accentra, Inc. v. Staples, Inc.*, 500 F. App'x 922, 931 (Fed. Cir. 2013) (nonprecedential) (same).

### B.     The District Court's Construction of Means-Plus-Function Terms as "plain and ordinary meaning" Should Have Been Reversed.

Had the panel considered claim 1, it would have been compelled to overturn the infringement verdict because of the district court's claim construction errors. *See* STC Br. 33-43.  The parties disputed the construction of the means-plus-function terms "means for transmitting . . ." and "means . . . for receiving . . ." in claim 1.  STC Br. 16-20.  Construction of means-plus-function claims requires both "determin[ing] the claimed function" and "identify[ing] the corresponding structure in the written description of the patent that performs that function." *Baran v. Medical Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010).  Over STC's objections, the district court declined to identify any corresponding structures for those limitations, and instead construed the means-plus-function terms as "plain and ordinary meaning" and improperly allowed GTT's expert to

argue claim construction to the jury. A10-16; A1505-06; A5178; A5755; A5792-93. This was error. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d at 1351, 1362 (Fed. Cir. 2008).

The jury could not have found the EMTRAC System infringed claim 1 under the proper construction of the "means for transmitting . . ." and "means . . . for receiving . . ." limitations. At trial, the only evidence that the EMTRAC System met the "means for transmitting the vehicle data" limitation was testimony from GTT's expert that vehicle data moves along a *wire* within the vehicle unit—but no wireless transmission of vehicle data at all in the EMTRAC System at all. A1504-06. But "a means-plus-function claim limitation is limited to the structures disclosed in the specification and equivalents," *Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1296 (Fed. Cir. 2012), and every embodiment in the patent discloses *wireless* transmission of vehicle data from the vehicle to an intersection. *See* STC Br. 10-11. Likewise, for the reasons set forth in STC's briefs, if the panel had addressed the other disputed means-plus-function terms, it could only have concluded that there was no structure in the EMTRAC system corresponding to the disclosed structure or its equivalents. *See* STC Br. 11-12, 42-43. The panel should have addressed the construction of the disputed means-plus-function terms, should have concluded that the district court's "plain and ordinary meaning" construction was wrong as a matter of law, should have reversed the

judgment of infringement of claim 1 on this basis, and should have vacated the

damages award as STC argued.

## II.  THE PANEL ERRED BY NOT ADDRESSING THE MERITS OF STC'S CLAIM CONSTRUCTION ARGUMENT FOR "MAP OF ALLOWED APPROACHES."

As to claim 16, STC's primary argument on appeal was that the district court

was wrong to reject STC's proposed construction of "map of allowed approaches"

as a "preprogrammed map of *routes* to the intersection where the traffic signal that

is to be preempted is located, said map being stored at the intersection." Op. 9.

This construction—which STC argued on appeal—is ***exactly*** the same construction

STC advocated before the district court in its joint claim construction statement

(A5124), and ***exactly*** the same construction the district court addressed and

rejected in its *Markman* order (A10). The panel said just that: "STC did argue that

'map of allowed approaches' should mean 'preprogrammed map of routes to the

intersection where the traffic signal to be preempted is located, said map being

stored at the intersection.'" Op. 10. The panel was therefore wrong to conclude

that "STC waived this argument by failing to raise it to the district court." *Id.*

The panel's apparent concern was that, when STC argued its claim

construction position before the district court, STC focused much of its argument

on the "stored at the intersection" aspect of the construction, rather than the "routes

to the intersection" aspect. *Id.* But this Court has never found a proposed claim

construction ***waived*** when a party advocates the exact same construction advocated

before the district court, solely because the party emphasizes different aspects of that construction.  To the contrary, this Court has held that "[t]he doctrine [of waiver] has not been invoked . . . to prevent a party from clarifying or defending the original scope of its claim construction, or from supporting its existing claim construction position with new citations to the specification."  *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001).

The panel also erred by concluding that, "***following the claim construction order***, STC ***never argued*** that the district court failed to address what they now claim is a fundamental dispute between the parties as to whether the 'map of allowed approaches' requires movement."  Op. 12 (emphasis added).  To be clear, STC's position was that, since it was advocating the same construction on appeal as it did at *Markman*, what happened post-*Markman* was irrelevant—and therefore STC never had a reason or opportunity to put its post-*Markman* arguments before the panel.  But STC's post-*Markman* briefing squarely raised the "movement" issue.  For example, STC argued that "[i]n Claim 1, as in the other asserted claims of the Patent, 'the map of allowed approaches' is the collection of all 'allowed approaches' to a location" and "requires a comparison between vehicle data and 'the map' to determine if a vehicle is within an allowed approach." A7107-08. STC distinguished GTT's "zones" argument, explaining that, in the EMTRAC System, the processor "compares 'vehicle data' only to one zone from the entire

collection of detection zones," "reads only one detection zone at a time," and "makes its 'determination' as to allowed approach (if any) based solely on a comparison between vehicle data and <u>one zone</u>, not a 'map' as required by the Claim." A7108.

While STC could of course have emphasized this "directionality" argument more than it did, it is plain that the heart of its argument in this section of the summary judgment briefing was that the "map of allowed approaches" required movement or non-static directionality, rather than a single static detection zone. At minimum, the "directionality" argument was "sufficiently clear to the trial court," and could not therefore be waived. *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1378-79 (Fed. Cir. 2009). The panel was simply incorrect in stating that STC "never made its directionality argument before the district court." Op. 12. For all of these reasons, instead of finding waiver, the panel should have addressed STC's claim construction argument on the merits.

## III.    THE PANEL MISCONSTRUED "CAN NOT BE DONE" IN 35 U.S.C. § 287(A).

The patent marking statute allows for patent notification to be marked on an article's packaging and excuses marking the article itself only if "from the character of the article, this can not be done." 35 U.S.C. § 287(a). The panel interpreted "can not be done" loosely, concluding that "there may be many other aspects of a patented article that can affect whether marking the article provides

sufficient constructive notice to the public." Op. 18. But "can not be done" means "can not be done"—the statutory framework does not permit public policy considerations concerning "sufficient constructive notice to the public." Had Congress intended marking to turn on whether, in the judgment of a district court or jury, there is "sufficient constructive notice to the public," it would not have chosen the language "can not be done."

The Supreme Court's 123-year-old decision in *Sessions v. Romadka* confirms that the panel's "sufficient constructive notice to the public" standard is incorrect, and that compliance with the marking statute turns on the physical nature of the article—not on public policy concerns about "sufficient constructive notice." In *Sessions*, the patentee had claimed to invent a trunk with a type of latch (called a "spring catch[]"). *See Sessions*, 12 S. Ct. 799, 799 (1892); *see also* U.S. Patent No. 128,925 (patent at issue in *Sessions*). Although the plaintiff marked larger versions of the latches with a patent notification, he failed to mark "smaller sizes, on account of the difficulty of marking them in such way that the mark would be legible when the catches were [manufactured]," and instead marked the trunk's packaging. *Sessions*, 12 S. Ct. at 805. The Supreme Court held that the marking statute (which is identical in all relevant respects to § 287(a), including the "can not be done" language) did not limit damages because, although it was not "clear that the stamp [of patent notification] could not have been made upon the smaller

sizes; [] in a doubtful case, something must be left to the judgment of the patentee . . . ." *Id.* at 805.  Critically, the Supreme Court considered only the physical "character" of the patented latches to be relevant in its analysis.  It nowhere mentioned the public-policy "sufficient constructive notice to the public" test that the panel created and applied.  *Compare* Op. 18.  In fact, neither the Supreme Court nor this Court has ever before found such public policy factors relevant to whether marking an article itself "can not be done."

Under the correct interpretation of § 287(a), GTT is not entitled to damages from STC prior to giving STC actual notice of alleged infringement.  Uncontroverted evidence at trial demonstrated that the physical "character" of GTT's Opticom system—the article patented by the '398 patent—*could* bear patent notification.  *See* STC Br. 55-58; A1994-95.  GTT undisputedly did not mark its system.  A1994.  And where, as here "both apparatus and method claims . . . were asserted and there was a physical device produced by the claimed method that was capable of being marked," § 287(a) applies to both the product and the method claims.  *American Med. Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1539 (Fed. Cir. 1993).  Thus, the panel should have vacated the damages award.

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing or rehearing *en banc* and reverse, or, in the alternative, vacate the damages award.

Respectfully submitted,

*/s/ Louis W. Tompros*

LOUIS W. TOMPROS
ANANT K. SARASWAT
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

ROBERT A. ARCAMONA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6000

*Attorneys for Defendant-Appellant
STC, Inc.*

July 6, 2015

# ADDENDUM

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**GLOBAL TRAFFIC TECHNOLOGIES LLC,**
*Plaintiff-Appellee*

**v.**

**RODNEY K. MORGAN, KM ENTERPRISES, INC.,**
*Defendants-Appellants*

**STC, INC.,**
*Defendant-Appellant*

———————————

2014-1537, 2014-1566

———————————

Appeals from the United States District Court for the District of Minnesota in No. 0:10-cv-04110-ADM-JJG, Judge Ann D. Montgomery.

———————————

Decided: June 4, 2015

———————————

CHAD DROWN, Faegre Baker Daniels LLP, Minneapolis, MN, argued for plaintiff-appellee. Also represented by JAMES W. PORADEK, TIMOTHY E. GRIMSRUD, LAUREN J. FRANK, TIMOTHY M. SULLIVAN, EVA BETH STENSVAD.

LOUIS W. TOMPROS, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for all defendants-

appellants.   Defendant-appellant STC, Inc. also represented by ANANT KUMAR SARASWAT; ROBERT ANTHONY ARCAMONA, Washington, DC.

JANA YOCOM RINE, Jana Yocom, P.C., Mount Vernon, IL, for defendants-appellants Rodney K. Morgan, KM Enterprises, Inc.

_____

Before DYK, O'MALLEY, and TARANTO, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Global Traffic Technologies, LLC ("GTT") asserted U.S. Patent No. 5,539,398 ("the '398 patent") against Rodney Morgan, KM Enterprises, Inc., and STC, Inc. (collectively, "Appellants")[1] in the United States District Court for the District of Minnesota.   At trial, the jury found that Appellants willfully infringed, *inter alia*, method claims 16 and 17 of the '398 patent, awarding $5,052,118 in damages.   Because Appellants claim construction arguments regarding the method claims are waived, we affirm the finding of infringement and decline to address Appellants' claim construction arguments for the remaining system claims.   We also reverse the district court's imposition of enhanced damages under § 284, but affirm its conclusions regarding the sufficiency of GTT's marking, the admission of GTT's damages expert's testimony, and Morgan's personal liability.   Accordingly, we *affirm-in-part*, *reverse-in-part*, and *remand*.

_____

[1]   Although KM Enterprises, Inc. ("KME") and Morgan, the sole shareholder of KME, filed separate appellate briefs, we treat Appellants collectively except where noted.

## I. BACKGROUND

### A. The '398 Patent

The '398 patent asserted that there was a need to preempt the normal traffic signal programming for emergency vehicles—e.g., fire trucks and ambulances. The '398 patent explained that preemption would allow those vehicles to get to an emergency more quickly and safely. The '398 patent discussed that the prior art systems for preempting traffic signals were based on optical emitters or radio transmitters. According to the patent, these prior art systems were inadequate because they required a line-of-sight with the signal controller or suffered from range/location inaccuracies.

To solve these alleged deficiencies, the '398 patent purported to provide a traffic control preemption system for emergency vehicles that used data from a global positioning system ("GPS"). In the disclosed invention, each vehicle was equipped with a GPS receiver and a processor module to generate "navigational vehicle data, such as position, heading and velocity." '398 patent col. 3 ll. 51–53. Each intersection was equipped with a module that received the navigational vehicle data, determined if the vehicle was approaching that intersection, and decided whether to preempt the normal traffic signal programming.

Figure 1 is illustrative:



## FIG.1

'398 patent Fig. 1. In Figure 1, the disclosed preemption system included a vehicle module 100 and an intersection module 200. The vehicle module 100 included the GPS receiver, which received the GPS information from a GPS system 5. The vehicle module 100 processed the GPS data and transmitted it "via transmitter 80 and antenna 101 to the intersection module 200." '398 patent col. 5 l. 24–25. The intersection module 200 received the data via

receiver antenna 210. The intersection module 200 then processed the vehicle data, and determined whether the vehicle was "within one of the allowed approaches to that intersection." '398 patent col. 5 ll. 47–48. If the vehicle was "within" one of those allowed approaches, the intersection controller 320 would adjust the traffic signal programming appropriately to allow the emergency vehicle to pass through the intersection.

Claim 16 is representative of the method claims on appeal:

16. A traffic control preemption method which uses data received from a global positioning system (GPS) to determine whether a vehicle, having an associated vehicle path, is allowed to preempt traffic signals at an intersection comprising the steps of:

(a) receiving GPS signals;

(b) processing the GPS signals on-board the vehicle so as to generate vehicle data;

(c) transmitting the vehicle data;

(d) providing a *map of allowed approaches*, wherein the map of allowed approaches comprises a plurality of preprogrammed allowed positions proximate to the intersection;

(e) comparing the vehicle data with the map of allowed approaches;

(f) determining based on a comparing step (e), whether the vehicle is within one of the allowed approaches; and

(g) allowing the vehicle to preempt the traffic signals associated with the intersection if the vehicle is within one of the allowed approaches.

'398 patent col. 10 ll. 43–63 (emphasis added).  The italicized term is at issue in the present appeal.

## B.  The Procedural History

STC, Inc. ("STC") partnered with KME, Morgan's company, to manufacture and distribute the EMTRAC GPS traffic preemption system ("EMTRAC").[2]  STC was responsible for manufacturing EMTRAC, and KME and Morgan were responsible for marketing and selling the system.  On September 30, 2010, GTT sued Morgan in the United States District Court for the District of Minnesota, alleging that EMTRAC infringed the '398 patent.  On April 28, 2011, GTT amended its complaint to include Morgan's company, KME.  GTT filed a separate complaint against STC on December 22, 2011, again alleging that EMTRAC infringed the '398 patent.  The district court consolidated the two actions in response to a stipulated motion.

Prior to trial, the district court construed the disputed claim terms—including "map of allowed approaches," which was given its plain meaning.  *Global Traffic Techs. LLC v. Emtrac Sys. Inc.*, No. 0:10-cv-4110, 2012 WL 2884846, at *5 (D. Minn. July 13, 2012) ("*Claim Construction Order*").  On September 20, 2013, the jury returned a verdict finding that KME, Morgan, and STC willfully infringed, *inter alia*, method claims 16 and 17.[3]  The jury

---

[2]    EMTRAC is a traffic preemption system that uses GPS receivers on emergency vehicles to determine the vehicles' positions.

[3]    Because Appellants do not separately challenge dependent claim 17, we will only address independent method claim 16 on appeal.  The jury also found infringement of certain system claims in the '398 patent.  On appeal, Appellants challenge the construction of claim

awarded GTT $5,052,118 in damages for the infringe-
ment. The district court denied all of Appellants' post-
trial motions for judgment as a matter of law ("JMOL"),
finding that: (1) GTT adequately proved infringement of
the method claims for the jury to find infringement, (2)
Appellants' infringement was willful, (3) the testimony of
GTT's damages expert was properly admitted, and (4) the
jury properly found Morgan personally liable for in-
fringement. *Global Traffic Techs. LLC v. Emtrac Sys.
Inc.*, No. 0:10-cv-4110, 2014 WL 1663420 (D. Minn. Apr.
25, 2013) ("*JMOL Order*"). The district court also award-
ed GTT $2,526,059 in enhanced damages under § 284
(50% of the total damages award), $923,965 in pre-
judgment interest, and $1,384.14 per day in post-
judgment interest.

Appellants timely appealed. We have jurisdiction un-
der 35 U.S.C. § 1295(a)(1) (2012).

## II. DISCUSSION

### A. Claim 16

STC recognizes that, our analysis of claim 16 is poten-
tially dispositive of its challenge to the jury's infringement
verdict. *See* Oral Arg. at 0:09, G*lobal Traffic Techs. LLC
v. Morgan*, 2014-1537, *available at*
http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20
14-1537.mp3 ("There are many issues raised in this
appeal, but I would like to start with one that is case
dispositive, and that is the construction of 'map of allowed
approaches.'"). Specifically, if we affirm the district
court's construction of "map of allowed approaches,"
because STC has asserted no other viable grounds upon
which to attack the jury's verdict of infringement with
respect to claim 16, that verdict will stand. And, because

_____

terms in these system claims, but, as explained *infra*, we
need not reach these constructions.

the method and system claims are allegedly infringed by the same products and conduct, STC does not contend that the number of claims infringed impacts the damages award, making an analysis of claim 1 and its claim terms unnecessary.

In its claim construction order, the district court found that "map of allowed approaches"—the only disputed term in claim 16—should be given its "plain meaning." *Claim Construction Order*, 2012 WL 2884846, at *5. In explaining its ruling, and the dispute between the parties it was resolving, the district court expressly refused to include two specific limitations in this claim term: a geographical or "location-specific" one and one it characterized as redundant. *Id*. STC had urged that the term include a reference to the fact that the map be a "preprogrammed" map and that the court expressly inform the jury that "said map" is to be "stored at the intersection" "where the traffic signal that is to be preempted is located." *Id*. The district court rejected both suggestions. While the court agreed that the map referenced in claim 16 must be preprogrammed, the court found that fact to be expressly stated elsewhere in the claim, making its use as a modifier of map redundant. *Id*. The court also found, for reasons it had explained when assessing similar requests by STC for intersection-specific location limitations to be read into other claim terms in the '389 patent, that no location-specific limitation should be read into map of allowed approaches. *Id*. Because, in the absence of STC's requests for these specific limitations, the court found no other dispute between the parties regarding the meaning of this claim term, it afforded the phrase its plain meaning. Importantly, STC neither sought reconsideration of the court's order as to this term nor explained at any time before trial that the court misunderstood the points it was urging with respect to the phrase "map of allowed approaches." The case proceeded to trial and, after the jury returned its verdict

finding infringement of claim 16, the district court reject-
ed STC's motion for JMOL, explaining that GTT present-
ed evidence that the EMTRAC system performed each of
the claimed steps, as the trial court had construed them.
*JMOL Order*, 2014 WL 1663420, at *2–3.

On appeal, STC argues that the district court miscon-
strued "map of allowed approaches," and that there was
insufficient evidence for the jury to find direct and indi-
rect infringement of claim 16 under its proposed construc-
tion.

i. Claim Construction: "map of allowed approaches"

Claim construction is a matter of law, which we re-
view de novo, but we review any underlying factual
findings by the district court for clear error. *Teva Pharm.
USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837–38 (2015).
Generally, claim terms should be given their ordinary and
customary meaning from the perspective of a person
having ordinary skill in the art at the time of the effective
date of the patent application. *Phillips v. AWH Corp.*, 415
F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). To ascer-
tain the scope and meaning of the asserted claims, we
look to the words of the claims themselves, the specifica-
tion, the prosecution history, and any relevant extrinsic
evidence. *Id.* at 1315–17. This inquiry, at times, begins
and ends with the intrinsic evidence. In fact, the specifi-
cation is the single best guide to the meaning of the claim
terms; it is often dispositive. *Id.* at 1318 ("[T]he specifica-
tion 'is always highly relevant to the claim construction
analysis. Usually, it is dispositive . . . .'" (internal cita-
tions omitted)).

On appeal, STC argues that the district court should
have construed the term "map of allowed approaches" as a
"preprogrammed map of *routes* to the intersection where
the traffic signal that is to be preempted is located, said
map being stored at the intersection." STC's Br. 43
(emphasis added by STC). According to STC, the funda-

mental dispute between the parties as to this limitation is "whether an 'approach' can encompass a fixed area (like a rectangle on a map), or whether it requires movement (like a route)." *Id*. STC contends that the claims, specification, and figures make clear that the "allowed approaches" limitation requires measurement of movement along a path or route toward the intersection and do not encompass static detection zones. More specifically, STC contends that the map of allowed approaches must be created from data tracking vehicle movement along a path using multiple data points along that path. STC's Br. 44.

GTT responds that STC waived this argument because it never argued before the district court that the "allowed approaches" required movement toward an intersection. GTT contends that the specification and claim language makes clear that the "map of allowed approaches" can take any shape, including rectangular detection zones.

We agree with GTT that STC waived this argument by failing to raise it to the district court. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is a general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). Although STC did argue that "map of allowed approaches" should mean "preprogrammed map of routes to the intersection where the traffic signal to be preempted is located, said map being stored at the intersection," its argument to the district court was that the map must be stored *at the intersection*; it never argued that a "route" required movement or a particular form of data point tracking. Joint Appendix ("J.A.") 5173–74.

In its claim construction brief, for example, while STC referenced the concept of a map of "paths," it only argued that the intrinsic evidence required that the "map of allowed approaches" (i.e., of its referenced paths) be

located at the intersection.   J.A. 5173–74; *see also* J.A. 5124 (arguing the same in the joint claim construction statement).    At the *Markman* hearing, moreover, STC confirmed to the court that the main dispute was over the physical location of the "map of allowed approaches."  *See Global Traffic Techs., LLC v. Emtrac Sys., Inc.*, No. 0:10-cv-4110 (D. Minn. May 30, 2012), ECF No. 110, at 39:12–22 ("With regard to 'map of allowed approaches,' . . . our point in connection with this hearing, is that there is a specific, definable geographical location with regard to the location and the intersection which is separate from that geographical location which is definable with respect to the vehicle.").   GTT explained to the trial court that "the big dispute seems to be, what [STC's] main infringement argument seems to be, is that they store the maps of allowed approaches in the—physically in the vehicle computer unit as opposed to physically at the intersection, and our position is that none of these claims require a physical location limitation."  *Id.* at 11:11–16.  STC not only did not dispute that characterization, it debated it head on.  *Id.* at 32:2–5 ("The 200 series of numbers within the patent refer to the intersection module.  The mapping means is physically there.  The patent doesn't describe anything else, so that's the only way to construe that language."); *see also id.* at 39:23–25 ("Figures 1, 2 and 3 of the patent support [STC's] claim construction that 'map of allowed approaches' has this physical element where it is within the intersection module.").   Indeed, at the *Markman* hearing, GTT even characterized the allowed approaches as "rectangles," and STC never objected to that characterization.   *Id.* at 7:6–9 ("In the slide here, the rectangle's showing one of the allowed approaches to the intersection and its determining that this police car's in the allowed approach using this GPS technology.").

    In its claim construction order, the district court rejected STC's "locational limitation" argument in finding that "map of allowed approaches" should be given its

plain meaning, but did not address whether the term required movement. *See Claim Construction Order*, 2012 WL 2884846, at *5. As noted, following the claim construction order, STC never argued that the district court failed to address what they now claim is a fundamental dispute between the parties as to whether the "map of allowed approaches" requires movement or non-static directionality. *See* STC's Br. 43–47; Oral Arg. at 1:40. Tellingly, although STC requested construction of other claim terms after the *Markman* order, it never made its directionality argument before the district court. As a result we find STC's proposed construction of "map of allowed approaches" waived.[4]

Accordingly, we reject STC's argument that "map of allowed approaches" should be limited to a map of "movement along a path (toward the intersection)." STC's Br. 46.

## ii. Infringement

Because infringement was tried to a jury, we review the jury's finding of infringement for substantial evidence. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010). It is sufficient for us to discuss indirect infringement. There is no substantial challenge on appeal to the sufficiency of the evidence to show the required underlying direct infringement—here, that Appellants' *customers* performed the steps of claim 16. As to the other elements of indirect infringement, the challenges on appeal fail based on meritlessness, waiver, or both.

---

[4]    Although STC argued at oral argument that it presented evidence at trial regarding the difference between the EMTRAC system and the system disclosed in the '398 patent, those arguments were directed at non-infringement, not claim construction. Oral Arg. at 6:07.

Putting to one side Morgan's argument about the alleged need for corporate veil-piercing, which we discuss below, appellants Morgan and KME argue only that they cannot be liable for indirect infringement unless they themselves directly infringed. That is incorrect. They can be liable for inducing or contributing to the direct infringement of their customers. Moreover, KME did not preserve a sufficiency challenge to indirect infringement through the required JMOL motions in the district court.

STC, for its part, contends that GTT failed to present sufficient evidence that it proceeded with the knowledge respecting the patent that is required to establish indirect infringement. GTT argues that STC waived these arguments by failing to present them in the required JMOL motions in the district court. We agree.

Although STC challenged the jury's finding of infringement of claim 16, it only argued that there was insufficient evidence that the EMTRAC system performed every claimed step. *JMOL Order*, 2014 WL 1663420, at *2–3. The district court properly rejected this argument and STC does not appeal this conclusion. We, therefore, agree with GTT that STC waived its new indirect infringement arguments made on appeal. *Singleton*, 428 U.S. at 120.

In addition to waiving these new arguments, they are without merit. GTT presented ample evidence that all accused infringers had affirmative knowledge of the '398 patent, had no reasonable non-infringement defense for claim 16 (see *Commil USA, LLC v. Cisco Systems, Inc.*, No. 13-896, 2015 WL 2456617 (Sup. Ct. May 26, 2015)), and indeed willfully blinded themselves to their infringement of at least claim 16, and the jury was free to credit that evidence. *See, e.g.*, J.A. 1734 ("we chose not to read it"); J.A. 1779:18–1780:15 (explaining that Morgan and STC had knowledge of the '398 patent when they started developing updates to the EMTRAC system). Because

Appellants do not challenge the jury instruction, affirming indirect infringement alone is sufficient to uphold the jury's verdict. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1222 (Fed. Cir. 2014) (holding that a general verdict will not be set aside if there is sufficient evidence to support any of the alternative factual theories so long as there is no dispute over the legal propriety of the jury instruction).[5]

## B. Enhanced Damages Under Section 284

The district court concluded that GTT was entitled to enhanced damages because it had proven successfully that Appellants willfully infringed the patent. The district court explained that Appellants' actions were objectively unreasonable because "an objectively reasonable person, with knowledge that a patent exists in the field in which the potential infringers wish to compete would not ignore the patent, but would investigate whether its design would infringe." *JMOL Order*, 2014 WL 1663420, at *13. As the district court noted, moreover, the jury found that GTT proved by clear and convincing evidence that Appellants actually knew or should have known that their actions constituted an unjustifiably high risk of infringement. As a result, the district court awarded GTT enhanced damages under § 284 in the amount of $2,526,059 (50% of the total damages award).

---

[5] GTT also presented evidence that Appellants themselves performed the patented method by testing and supporting the EMTRAC system. *See, e.g.*, J.A. 1693:23–1694:2 (testifying that Appellants would make the EMTRAC systems, test it, and then ship it to customers). Because we uphold the jury's finding of infringement based on indirect infringement, however, we need not decide whether the evidence of direct infringement is sufficient to maintain the entirety of the damages award. *See Ericsson*, 773 F.3d at 1222.

Section 284 states in relevant part that "the court may increase the damages up to three times the amount found or assessed." A patentee must show that he is entitled to enhanced damages by showing that the infringer willfully infringed. *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc). *Seagate* sets out a two-part test for proving willfulness where the patentee must show that: (1) "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) the "objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* at 1371. The first question is for the court; the second is for the jury. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012). We review the first prong de novo and the second prong for substantial evidence. *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1090–91 (Fed. Cir. 2014).

On appeal, Appellants challenge the district court's analysis of the first prong. We conclude that the district court applied the wrong standard in its analysis of that prong. The district court found that there was ample evidence in the record that Appellants knew of the patent and determined that "an objectively reasonable person, with knowledge that a patent exists in the field in which the potential infringers wish to compete would not ignore the patent, but would investigate whether its design would infringe." *JMOL Order*, 2014 WL 1663420, at *13. The infringer's knowledge of the patent is irrelevant to the first *Seagate* prong, however. *See Seagate*, 497 F.3d at 1371 ("The state of mind of the accused infringer is not relevant to this objective inquiry."). Instead, the district court should have considered whether Appellants acted "despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. This requires analysis of all of the infring-

er's non-infringement and invalidity defenses, even if those defenses were developed for litigation. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1382 (Fed. Cir. 2014) ("The court properly considered the totality of the record evidence, including the obviousness defense that Pulse developed during the litigation, to determine whether there was an objectively-defined risk of infringement of a valid patent.").

In this case, the district court found that Appellants "had good-faith invalidity defenses once litigation began." *JMOL Order*, 2014 WL 1663420, at *14. We agree. Because Appellants' defenses during litigation were objectively reasonable, GTT failed to prove the first prong of our willfulness test. *See Halo*, 769 F.3d at 1382. As a result, we reverse the district court's award of enhanced damages under § 284.

## C. Marking

GTT makes and sells the Opticom GPS System ("the Opticom system"). There is no dispute that the Opticom system embodies at least one claim of the '398 patent. GTT argued that Appellants received constructive notice of the '398 patent because, although GTT did not mark the physical components in the system, it did mark the packaging in which the Opticom system was sold. The district court instructed the jury to determine whether marking the packaging was sufficient to meet GTT's marking requirement under § 287. The jury found that GTT adequately marked Opticom and, based on that conclusion, awarded damages from the date Appellants started selling the EMTRAC system, rather than the date on which GTT filed this lawsuit. The district court upheld the jury's finding in response to Appellants' motion for JMOL.

On appeal, Appellants argue that GTT failed to comply with the marking statute because it marked the packaging of its patented products rather than the indi-

vidual products themselves, even though there was suffi-
cient physical space on the components of the Opticom
system for marking. In essence, Appellants ask us to hold
as a matter of law that, if there is physical space on any
component of a patented system, the patentee must mark
that component to comply with the marking statute.

Section 287(a) states in relevant part:

Patentees . . . may give notice to the public that
[any patented article] is patented, either by fixing
thereon the word "patent" or the abbreviation
"pat." together with the number of the patent . . .
or when, from the character of the article, this can
not be done, by fixing to it, or to the package
wherein one or more of them is contained, a label
containing a like notice.

35 U.S.C. § 287(a). As the statute states, marking of "any
patented article" is necessary if, "from the character of the
article," it can be marked. *Id.* In this case, the "patented
article" is a system such that the "character of the article"
is defined by more than the physical surfaces on its com-
ponent parts. *Id.* Because the purpose of the marking
statute is to provide constructive notice to the public,
moreover, we apply a rule of reason analysis in determin-
ing when "substantial compliance may be found to satisfy
the [marking] statute." *Maxwell v. J. Baker, Inc.*, 86 F.3d
1098, 1111 (Fed. Cir. 1996).

As noted, the marking statute requires an analysis of
the "character of the article." 35 U.S.C. § 287(a). Certain-
ly, the physical size of the article may be one factor in
considering whether the article itself must be marked
rather than the packaging. *See Sessions v. Romandka*,
145 U.S. 29, 49–50 (1896) (considering the patentee's
ability to stamp the patented screws with a legible mark
based on the size of the screws). The physical size of the
patented article, however, is not the only thing that
defines the "character of the article." 35 U.S.C. § 287(a).

There may be many other aspects of a patented article that can affect whether marking the article provides sufficient constructive notice to the public. *See Maxwell*, 86 F.3d at 1111. Because we do not pretend to know all of the possible types, characteristics, or components of patented—and yet to be patented—machines and systems, we cannot construct a bright line rule regarding what aspects to consider in determining whether marking the packaging amounts to "substantial compliance." *Id*. One example is a multi-component system that embodies a patent. In this example, marking the individual components of the system may not have the desired notice effect of providing public notice because such markings may mislead the public into believing that the marked components themselves are patented, as opposed to the entire multi-component system. As another example, patented articles may be immediately installed out of the public view once unpackaged. Again, in this example, the public may be better notified with marking on the packaging, as opposed to the article itself.

We use these examples to show that the physical size of the article is not the only aspect of the "character of the article" that may be considered. 35 U.S.C. § 287(a). Because there may be many factors that affect the character of a patented article, we hold that, when a patentee marks the packaging rather than the article, the district court should evaluate the specific character of the article at issue. *See Sessions*, 145 U.S. at 50 ("[S]omething must be left to the judgment of the patentee, who appears in this case to have complied with the alternative provision of the act, in affixing a label to the packages in which the [patented articles] were shipped and sold."). This factual inquiry regarding the character of the patented article, moreover, may be submitted to a jury, as the district court did here.

In this case, there was substantial evidence for the jury to find that GTT substantially complied with § 287 by

marking the Opticom packaging. Appellants presented evidence that their patented product was an entire system that contained multiple components that were separated once unpackaged. J.A. 1980:9–16 ("My understanding is the thought around the packaging is that the, again, this is a system. It's all the components functioning together. The only time the system is really together is when it is shipped from the manufacturer. So that's the only time that all the components are together."). Appellants' expert also testified that some of the components are not in the public view once installed and that other companies had marked the product in the same way, that the marking used reflected industry custom. *See* J.A. 1980:24–1981:9 ("And then when they are installed, in many cases, the face selector, for example, is installed inside of a traffic control cabinet. That cabinet is locked. It's out of public view. The mast arm radio that you saw earlier is mounted on top of a mast arm or a pole that the signal lights are hanging on. It's mounted up on top of that. That's high up and out of public view. The vehicle components as well, one component could be in the trunk of a police car, a bus, for example. The component could be in an equipment cabinet, again locked, excuse me, out of the public view."); J.A. 1979:10–19 (testifying that 3M marked Opticom the same way before GTT acquired the technology). Based on these factors, it was reasonable for the jury to conclude that marking the packaging of Opticom—the only time when all of the components that made up the patented system were together and in full view of the public—adequately served the purpose of providing constructive notice to the public that the entire Opticom system was patented.

For the foregoing reasons, we uphold the jury's finding that GTT complied with the marking statute.

## D. GTT's Expert's Testimony

The district court found that it properly allowed testimony by GTT's damages expert at trial. We review the admission of expert testimony under the law of the regional circuit—here, the Eighth Circuit. *Ericsson*, 773 F.3d at 1225. The Eighth Circuit reviews the admission of expert testimony for abuse of discretion. *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 928 (8th Cir. 2001).

On appeal, Appellants argue that the district court breached its gatekeeping obligation under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), by failing to exclude GTT's damages expert's trial testimony. Appellants contend that GTT's expert failed to consider price elasticity in his testimony at trial, providing no economic evidence to support his theory. That is not so: GTT's expert did testify to price inelasticity at trial. *See* J.A. 2100, 2102. As GTT points out, moreover, GTT's expert's testimony was based on the analysis in his expert report, which elaborated on price elasticity. Appellants do not argue that GTT's expert departed from the methodology described in his report, or that the methodology in his report was improper. Appellants had the opportunity to cross-examine GTT's expert and could have asked him about price elasticity at trial.

We, therefore, affirm the district court's denial of Appellants' motion for JMOL regarding the exclusion of GTT's damages expert's testimony.

## E. Personal Liability of Morgan

The district court denied Morgan's motion for JMOL that he was not personally liable for infringement. We review a district court's denial of JMOL under the law of the regional circuit. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010). The Eighth Circuit reviews a district court's grant or denial of JMOL de novo, applying the same standard as the district court.

*Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007). To grant a motion for JMOL, we must find that "there is no legally sufficient evidentiary basis to support a jury verdict in the non-moving party's favor." *Id.* (citing Fed. R. Civ. P. 50(a)(1)).

On appeal, Morgan argues that GTT never alleged that Morgan was individually liable as an infringer, only that Morgan was liable as the sole shareholder and director of KME. Morgan also contends that, as KME's corporate officer, he cannot be found personally liable for infringement absent a finding that the corporate veil should be pierced. GTT responds that it explicitly pled that Morgan was personally liable in its amended complaint and throughout the course of litigation. GTT insists that there was ample evidence that Morgan *personally* induced infringement under § 271(b).

We agree with GTT that it adequately alleged that Morgan was individually liable as an infringer, starting with the complaint and continuing through trial. We also agree with GTT that the jury had a sufficient basis to find that Morgan personally induced infringement based on his own actions, and was therefore directly liable. Accordingly, there was no need to pierce the corporate veil to find Morgan derivatively liable for KME's infringement. As we explained in *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir. 2010), "'corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement *regardless* of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil.'" 609 F.3d at 1316 (quoting *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)). In this case, GTT presented substantial evidence to indicate that Morgan personally induced customers to perform the patented method in claim 16 of the '398 patent. *See, e.g.*, J.A. 1757:20–1760:20 (testifying that he *personally* helped cities use the

EMTRAC system and got his "hands dirty every day, installing, testing, repairing and developing" the EMTRAC GPS product). The jury reasonably found that Morgan is personally liable for his own actions that constituted induced infringement under § 271(b), without piercing the corporate veil. *See Wordtech*, 609 F.3d at 1316; *see also United States v. Trek Leather, Inc.*, 767 F.3d 1288, 1299 (Fed. Cir. 2014) (en banc) ("[A] person who personally commits a wrongful act is not relieved of liability because the person was acting for another.").

Furthermore, GTT made it clear that it was only alleging induced infringement against Morgan and all of its evidence of Morgan's involvement was focused on proving induced infringement. *See* J.A. 1015:2–4 ("[We are] pursuing individual liability for Rodney Morgan only under an inducement theory under Section 271."); J.A. 1757:18 ("And, now, we're talking about indirect infringement."). Furthermore, Morgan does not challenge the district court's jury instruction on appeal.[6]

---

[6]    In *Wordtech*, this court stated that "the 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'" 609 F.3d at 1313. We do not believe this statement represents a departure from the traditional rule that a person is personally liable for his own tortious actions, even if committed as a corporate officer. *See Trek Leather*, 767 F.3d at 1299 ("It is longstanding agency law that an agent who actually commits a tort is generally liable for the tort along with the principal, even though the agent was acting for the principal. That rule applies, in particular, when a corporate officer is acting for the corporation." (citations omitted)). Instead, we interpret *Wordtech* as reinforcing the rule that a corporate officer—or perhaps only a corporate owner, *see*

Accordingly, we affirm the infringement verdict against Morgan and in favor of GTT.

### III. CONCLUSION

For the foregoing reasons, we affirm the jury's finding of infringement of the asserted method claims of the '398 patent—claims 16 and 17—but reverse the district court's imposition of enhanced damages under § 284. We also affirm the jury's finding that GTT complied with the marking statute, the district court's findings that GTT's damages expert's testimony was properly admitted, and the infringement verdict against Morgan. We remand for the district court to enter judgment consistent with this opinion.

**AFFIRMED-IN-PART, REVERSED-IN-PART, REMANDED**

---

*Wordtech*, 609 F.3d at 1313 n.2—cannot be found derivatively liable for *the corporation's infringement* without piercing the corporate veil. *See, e.g.*, *Manville*, 917 F.2d at 552 ("For Butterworth and DiSimone, officers of Paramount, to be personally liable *for Paramount's infringement* under section 271(a), there must be evidence to justify piercing the corporate veil." (emphasis added)); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986) ("To determine whether corporate officers are personally liable for the *direct infringement of the corporation* under § 271(a) requires invocation of those general principles relating to piercing the corporate veil." (emphasis added)). Because GTT only argues that Morgan induced infringement in this case, however, we need not reach this issue.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 6th day of July, 2015, I filed the foregoing

Defendant-Appellant STC, Inc.'s Combined Petition for Panel Rehearing and

Rehearing En Banc with the Clerk of the United States Court of Appeals for the

Federal Circuit via the CM/ECF system, which will send notice of such filing to all

registered CM/ECF users.


July 6, 2015                                  */s/ Louis W. Tompros*
                                             LOUIS W. TOMPROS
                                             WILMER CUTLER PICKERING
                                                 HALE AND DORR LLP
                                             60 State Street
                                             Boston, MA  02109
                                             (617) 526-6000

## CERTIFICATE OF COMPLIANCE

Counsel for Defendant-Appellant STC, Inc. certifies that:

1.      The brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 40(b) because exclusive of the exempted portions it does not exceed 15 double-spaced pages.

2.      The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2010 in a proportionally spaced typeface:  Times New Roman, font size 14 point.

July 6, 2015                                     */s/ Louis W. Tompros*
                                                      LOUIS W. TOMPROS
                                                      WILMER CUTLER PICKERING
                                                         HALE AND DORR LLP
                                                      60 State Street
                                                      Boston, MA  02109
                                                      (617) 526-6000