Nos. 14-1537, 14-1566

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

GLOBAL TRAFFIC TECHNOLOGIES, LLC,

Plaintiff-Appellee,

v.

RODNEY K. MORGAN, KM ENTERPRISES, INC.,

Defendants-Appellants.

and

STC, INC.,

Defendant-Appellant.

_____

On appeal from the United States District Court
for the District of Minnesota
The Honorable Ann D. Montgomery

_____

# MOTION TO STAY ISSUANCE OF MANDATE
# PENDING APPLICATION FOR WRIT OF CERTIORARI

_____

August 13, 2015                    (*Counsel listed on inside cover*)

Jana Yocom, P.C
Jana Yocom Rine (#6193677)
320 S. 11th, Suite 1
Mount Vernon, Illinois 62864
618-731-1944
jana.yocom@gmail.com

*Attorney for Defendants*
*KM Enterprises, Inc., and Rodney*
*Kris Morgan*

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellants KM Enterprises, Inc. and Rodney K. Morgan certifies the following:

1. The full name of every party or *amicus* represented by us is:

   KM Enterprises, Inc.

   Rodney K. Morgan

2. The names of the real party in interest represented by us is:

   Not applicable.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

HELLMUTH & JOHNSON: Terrance C. Newby, Jonathan D. Jay (both formerly of Leffert Jay & Polglaze).

RASMUS LAW OFFICE, LLC: R Daniel Rasmus, Andrew G Birkeland.

ROBINS KAPLAN MILLER & CIRESI LLP: Andrew D Hedden, Jacob M  Holdreith, Carrie M Lambert, Kelly M McLain, Shira T Shapiro.

SHUMAKER & SIEFFERT, PA: Nicholas S. Kuhlmann (formerly of Leffert Jay & Polglaze).

JANA YOCOM, P.C.: Jana Yocom Rine

Elizabeth L Taylor

Dated: August 13, 2014                    */s/ Jana Rine*
                                          JANA YOCOM, P.C.

# TABLE OF CONTENTS

Table of Authorities…………………………..………………………..……..……......ii

Index of Exhibits………………………………………………………..……...……..iv

Argument……………………………………………………………………..…………..1

*The planned petition for writ of certiorari will present a substantial question………………......…1*

*Is a patent holder free to use his technology in an improved iteration under the doctrine prohibiting ensnarement, the reverse doctrine of equivalents or as a statutorily authorized use, after the innovation is used, and cited as prior art, in a patent protecting a similar improvement?.................................................................................................3*

*The Emtrac System cannot infringe Claim 16 because the claim ensnares the prior art, which is the Morgan Patent………………………………………………………….4*

*Performance of step c was authorized by the Morgan Patent and thus could not fall within the statutory definition of infringement found in Section 271(a)……..……..…..6*

*The reverse doctrine of equivalents applies in this case as the Emtrac product functions in a substantially different way than the innovation claimed……..…….…….7*

*The Emtrac System cannot perform steps (d) through (g)……..………….……7*

*The 1988 Emtrac System is described…………………………………...………..8*

*Cross published a white paper called the Vectored Zone Approach in 1993, three years before the patent in suit was issued, but Cross did not use the Vectored Zone ideas in his modification of the Emtrac System because of incompatibilities…………………………………………………….…………..9*

*When Cross and Morgan revisited GPS technology in the context of the Emtrac System, GPS had advanced to allow the original "smart vehicle" to function because differential GPS was no longer required and processor power allowed storage of data regarding numerous intersections……………………………………………………..…….……..10*

*Would proper review of the claim construction of the term "location" have prevented the successful abandonment of a flawed expert construction in favor a legally unfounded construction by GTT on appeal?.................................................................................10*

*Defendants will suffer irreparable harm if the mandate is not stayed pending a petition for writ of certiorari; a balance of the equities favors Defendants…………..…………………...……..14*

Conclusion………………………………………………..…………………………..20

# TABLE OF AUTHORITIES

Cases

*Connecticut v. Doehr,*
   501 U.S. 1 (1991)................................................................16

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
   567 F.3d 1314 (Fed.Cir. 2009) .........................................4

*INS v. Legalization Assistance Project,*
   510 U.S. 1301 (1993).....................................................1, 2

*K-2 Corporation v. Salomon S.A.,*
   191 F.3d 1356 (Fed.Cir. 1999) .........................................7

*Limelight Networks, Inc. v. Akamai,*
   134 S.Ct. 2111 (2014)..................................................3, 11

*Mitchell v. W.T. Grant Co.,*
   416 U.S. 600 (1974)...........................................................16

*Monsanto Co. v. Syngenta Seeds, Inc.,*
   503 F.3d 1352 (Fed.Cir. 2007) .........................................6

*Pennzoil Company v. Texaco, Inc.,*
   481 U.S. 1 (1987)...............................................................15

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
   490 U.S. 477 (1989)............................................................2

*Snaidach v. Family Finance Corp. of Bay View,*
   395 U.S. 337 (1969).........................................................16

*State Oil Co. v. Khan,*
   522 U.S. 3 (1997)................................................................2

*Teva Pharmaceuticals v. Sandoz, Inc.,*
   135 S.Ct. 831 (2015)....................................................3, 14

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
   520 U.S. 17 (1997).....................................................3, 4, 11

*Wilson Sporting Goods Co., v. David Geoffrey & Assoc.,*
   904 F.2d 677 (Fed.Cir. 1990) ...........................................4

Statutes

28 U.S.C. §2101 .....................................................................1
35 U.S.C. §271(a) .............................................................6, 11
735 ILCS 5/2-1402................................................................18

735 ILCS 5/2-1402(a) ...............................................................................18

735 ILCS 5/2-1402(m)(2) ......................................................................18

Rules

Illinois Supreme Court Rule 277 ...........................................................18

United States Supreme Court Rule 23 ....................................................1

Pursuant to Federal Rule of Appellate Procedure 41(d)(2), 28 U.S.C. §2101 and United States Supreme Court Rule 23, Defendants Rodney K. Morgan ("Morgan") and KM Enterprises, Inc. (collectively "KME"), by their undersigned attorney, file this Motion to Stay Issuance of Mandate Pending Application for Writ of Certiorari to the Supreme Court of the United States, as follows:

## ARGUMENT

Traditional factors regulating the issuance of a stay weigh in favor of granting one in this case.

### A. *The planned petition for writ of certiorari will present a substantial question.*

When a party asks an appellate court to stay its mandate pending the filing of a petition for a writ of certiorari, that party must show that the petition will present a substantial question and that there is good cause for a stay. The inquiry in that regard must focus on whether the applicant has a reasonable probability of succeeding on the merits and whether the applicant will suffer irreparable injury. Traditionally, to demonstrate a reasonable chance of succeeding on the merits the applicant must show a reasonable probability that four Justices will vote to grant certiorari and a reasonable possibility that five Justices will vote to reverse the judgment of this Court. *See, INS v. Legalization Assistance Project,* 510 U.S. 1301, 1304 (1993). In undertaking this assessment, the Court must undertake a somewhat different task than that performed by a circuit judge in deciding a case on the

1

merits. The Supreme Court has made it clear that, in deciding cases presented in the normal course of decision, a lower court judge ought not anticipate changes in established doctrine. *See State Oil Co. v. Khan,* 522 U.S. 3, 20 (1997); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484 (1989). On the other hand, in determining whether to grant an application for stay of mandate, the judge must perform the predicative function of anticipating the course of decision in the Supreme Court of the United States. *See INS v. Legalization Assistance Project,* 510 U.S. 1301, 1304 (1993).

Compelling reasons encourage review in this case. This Court has decided, or avoided deciding, important questions of federal law that have not been, but should be settled by the Supreme Court of the United States. The decision in this case also involves important questions of federal law decided in a way that conflicts with relevant decisions of the Supreme Court of the United States.

Specifically, important federal questions include the scope of patent protection to avoid infringement of a method claim which uses the patented technology, cited as prior art, as a step in its distinguishable process. This question includes whether the reverse doctrine if equivalents is a viable theory, whether ensnarement of prior art is allowed in light of statutory language suggesting such use is authorized and thus not susceptible of infringement. This question encompasses the claim construction issues involving the term "location" and whether the proper standard

of review was applied in light of the necessary factual development required in order to properly construe the claim. If the method claim were required to be proven in alphabetic order, the location term was necessarily construed as there were no Emtrac components located at the intersection to perform steps listed after step (c). Relevant decisions of the Supreme Court contrary to this Court's decision at issue include *Teva Pharmaceuticals v. Sandoz, Inc.,* 135 S.Ct. 831 (2015), *Limelight Networks, Inc. v. Akamai,* 134 S.Ct. 2111 (2014) and *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17 (1997).

Because of the Supreme Court's unique procedures and discretion to review only isolated questions if it so chooses, any argument in support of a claim may be raised in a petition for writ of certiorari. An issue or argument is eligible for consideration by the Supreme Court if a party pleaded or presented in the lower courts a "claim" embracing that issue or argument. A party can make any argument in support of its claim without limitation to the precise arguments made below.

1. *Is a patent holder free to use his technology in an improved iteration under the doctrine prohibiting ensnarement, the reverse doctrine of equivalents or as a statutorily authorized use, after the innovation is used, and cited as prior art, in a patent protecting a similar improvement?*

Direct infringement of Claim 16 cannot be proven because end users of the Emtrac Systems product did not perform step (c) in a way that infringed the '398 patent. AP Br. p. 27-29. End users could not perform step (c) in a way that

infringed the '398 patent because the step is performed by the system, which does not infringe. *See* A7105-7106, A7180, A8060, A8170, A8222 ¶233, A8235 ¶268, A8236, A8368-8380, A8393, A8404, A8457-8458, A8558-8562, A8570-8571, A8739, A8769-8770, A8783-8784, A8793, A8979-8980, A8984, A9009, A9019-9021. Step (c) does not infringe because it performs the mechanism set forth in the Morgan patent, which was cited as prior art to which the '398 patent is subject.

    a. *The Emtrac System cannot infringe Claim 16 because the claim ensnares the prior art, which is the Morgan Patent.*

In this case, the "means for transmitting the vehicle data" found in Claims 1 and 16 cannot be infringed by the Emtrac product without ensnaring the Morgan patent '434, which was cited as prior art in the patent in suit. This Court has held that the doctrine of equivalents cannot allow a patent to encompass subject matter existing in the prior art. *Id.; see Wilson Sporting Goods Co., v. David Geoffrey & Assoc.,* 904 F.2d 677, 684 (Fed.Cir. 1990)("[A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims."); *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1323 (Fed.Cir. 2009), *citing Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21 (1997)(the defense of ensnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare' the prior art.) Specifically, Claim 21 of the Morgan patent reads:

21. A traffic signal preemption system for enabling emergency vehicles to cause a traffic light controller at an intersection to preempt traffic signals at the intersection, said system comprising:

A vehicle information transmission system installed in at least one emergency vehicle and including directional transmission means actuatable by the vehicle's occupants for generating information identifying said emergency vehicle and for repeatedly transmitting said information as a vehicle identification signal in the direction of vehicular motion; vehicle detection, identification, and preemption system connecting to at least one traffic light controller and including radio signal receiving means for receiving vehicle identification signals from one or more of said transmission systems, for extracting information identifying the emergency vehicle therefrom, and for determining, based upon preprogrammed preemption criteria including the identity of the vehicles, when and in favor of which direction and for how long to preempt an intersection;

Wherein wired vehicle detection, identification and preemption system contains intersection entry direction information for each of said at least one emergency vehicles, which information is stored within each said vehicle detection, identification and preemption system;

And wherein this intersection entry direction information enables said vehicle detection, identification, and preemption a system to determine the direction from which a given vehicle is approaching the intersection.

Morgan Patent, Claim 21, A5378. s. 86, l. 37-69. The Morgan patent, especially Claim 21, gives Morgan and Cross the right to perform that function, if not to exclude others from doing so. A30062.

More specifically, position information generated by the GPS receiver in the Emtrac System is not transmitted to the intersection, but is processed on-board the vehicle. The GPS technology essentially replaces the functions performed by the

electronic compass on the previous Emtrac System that automated the directional and priority function. A8059-8061. The transmission remained essentially the same as the one set forth in the Morgan patent, to which the '398 is subject. In addition, the intersection components in the current Emtrac System are unchanged from the 1988 non-GPS version. The transmission that takes place is simply a priority request after position and direction information are processed on board the vehicle. As a result, the transmission step cannot infringe. *See* A8286-8287; *see also* A8983-8985; A9560-9663. Nor can steps (d) through (g) be infringed because, as step (c) is construed on appeal by GTT, those steps are not performed by the Emtrac System.

   b. *Performance of step c was authorized by the Morgan Patent and thus could not fall within the statutory definition of infringement found in Section 271(a).*

   In other words, transmission of vehicle data, as the term is used in Claim 16, is authorized. As such, it cannot fall within the language of the Patent Act definition of infringement which requires an unauthorized use. *See* 35 U.S.C. §271(a).

In this case, the step of transmitting vehicle data was performed as part of the traffic preemption process invented by Morgan in 1988.

Section 271(a) was not violated and the method claim was not infringed. *See Monsanto Co. v. Syngenta Seeds, Inc.,* 503 F.3d 1352, 1360 (Fed.Cir. 2007).

> c. *The reverse doctrine of equivalents applies in this case as the Emtrac product functions in a substantially different way than the innovation claimed.*

Another way of explaining non-infringement in this context is that even if every limitation of at least one properly construed claim is infringed, KME and Morgan may nevertheless succeed on their non-infringement defense if the differences between the accused structure and the claimed structure were substantial at the time the patent was issued, as determined by a person having ordinary skill in the art, or if the accused structure performed the claimed function in a substantially different way to accomplish substantially the same result. GTT's only evidence of infringement of Claim 16, step (c) is by equivalents. A2905. GTT abandoned that theory on appeal after its deficiencies were exposed in the appellant brief. There are several legal limitations on the doctrine of equivalents. First the doctrine of equivalents cannot allow a patent claim to encompass subject matter that could not have been patented; nor can it be used to ignore the actual language of the patent. *K-2 Corporation v. Salomon S.A.,* 191 F.3d 1356, 1367 (Fed.Cir. 1999).

> i. *The Emtrac System cannot perform steps (d) through (g).*

Because the transmission in step (c) is of "vehicle data," which is defined as including "vehicle position data," step (d) cannot be performed by the Emtrac System. A188, s.9, l.31-32; Claim 8; Claim 17. In the Emtrac product, vehicle

position cannot be transmitted to the intersection as there is no GPS receiver located at the intersection to process such information. A2539, A2540. In fact, the intersection components of the Emtrac System have remained unchanged since the 1988 innovation. Thus, steps (d) through (g) of Claim 16 cannot be performed by the Emtrac System. While the GPS technology at the time of the patent at issue required differential GPS, involving two locations, Emtrac does not use differential GPS. Its only GPS unit is on the vehicle. It is undisputed that the patent in suit includes only one embodiment which employs differential GPS. Figure 1 of the specifications, setting forth a GPS system without the assistance of differential technology discloses a plus or minus 100 yard error rate. That embodiment was waived by Plaintiff. The Emtrac product does not use differential GPS and does not infringe the elements dealing with transmitting vehicle data as a matter of law.

    ii.    *The 1988 Emtrac System is described.*

    In 1988, after Rodney Kris Morgan ("Morgan"), together with Brad Cross ("Cross"), invented a radio frequency version of the Emtrac product, by which the emergency vehicle communicated with the intersection via radio signal transmissions. A2483. Distance was determined by received radio signal strength and direction of travel was determined by an electronic compass. A2410. The Morgan patent, U.S. Patent No. 4,914,434 (" '434") was issued in April, 1990. A2488, A30001-30068.

8

    *iii.    Cross published a white paper called the Vectored Zone Approach*
    *in 1993, three years before the patent in suit was issued, but Cross*
    *did not use the Vectored Zone ideas in his modification of the*
    *Emtrac System because of incompatibilities.*

In May and June of 1993, Cross began publishing work toward development

of a GPS version of the technology, A2352, A5151, A5242-5250, A2367, and the

product was later reduced to practice, developed and marketed by others. A2360,

A2419, A2420, A2427, 2432, 2434. Apart from the use of the same telemetry

(sending data via radio), the Vectored Zone approach was not viewed by STC as

compatible with the Emtrac System. A2370, A2372, 2376. That is because the old

radio frequency Emtrac System was a "smart vehicle" system. A2371. Direction of

travel and vehicle ID were determined by an electronic compass and transmitted

via radio to the intersection where the preemption request was processed. A2371.

The GPS product which grew out of Cross' Vectored Zone memorandum,

used a "smart intersection", or "smart cabinet". A2427, A2436, A2472, 2508,

2509, 2542. This GPS technology was never used to modify the Emtrac System. It

formed the basis of the '398 patent, perhaps by coincidence. The switch from

"smart vehicle" to "smart intersection" by Cross in his 1993 work toward GPS

modification of traffic signal preemption technology was a result of lack of

processor power to accomplish necessary memory capacity. The Vectored Zone

Model lacked the processor capacity for storage of approach criteria for the many

intersections necessary for a "smart vehicle" at that time. A2509. The approach

data in the Vectored Zone idea was stored at the intersection for that reason. *See* A2509, 2510.

An additional reason for use of a "smart intersection" in the early GPS traffic preemption technology is the induced error incorporated in GPS functionality at that time. A2427. It was necessary to enhance the accuracy of GPS navigation for use in traffic preemption with differential GPS. A2427. Differential GPS was noted in the Cross Vectored Zone memorandum and discussed at length in the '398 patent. A2427, A5188, A5186, A5198 (s.6, l. 5-30; 45-65), A5200 (Claim 9). The '398 patent was issued on July 23, 1996.

Cross did not develop the Vectored Zone model after he drafted the white paper in 1993. Similarities between concepts advanced there and in the 1996 '398 patent are remarkable. The significance of this discussion is that Cross did not use concepts introduced in the Vectored Zone memorandum in his innovations of the Emtrac GPS product.

> iv.  *When Cross and Morgan revisited GPS technology in the context of the Emtrac System, GPS had advanced to allow the original "smart vehicle" to function because differential GPS was no longer required and processor power allowed storage of data regarding numerous intersections.*

After 2004, Cross began addressing improvements to the Emtrac product using GPS capability, which had greatly improved since his early experience in 1993. A2526, 2527. The Emtrac GPS product was substantially similar to its 1988

version.  For instance, previously written code was revisited. A2363. There was no

change to the intersection components. A2528.  Cross was now able to add GPS

advantages while retaining the "smart vehicle" functions, which were not possible

at the time of his Vector Zone documentation.

>    v.    *Important federal questions are involved and Supreme Court case law is at issue.*

This issue involves an important federal question that should be settled by

the Supreme Court regarding the scope of patent protection, including a case of

first impression in which the author of cited prior art is sued for infringement

alleging a step involving use of his own innovation. Another important federal

question at issue involves whether the reverse doctrine of equivalents is a viable

legal theory, and if not, whether juries should be allowed to consider equivalents at

all under the traditional definition. Finally, at issue is whether ensnarement of prior

art is so rarely cited because it is simply another way of saying that the use is

authorized and thus involves a simple statutory defense.

Supreme Court case law is contradicted here as well.  *See Limelight Networks,*

*Inc. v. Akamai,* 134 S.Ct. 2111 (2014)(requiring direct infringement of all steps of

a method patent for proof of liability under 35 U.S.C. §271(a)), *Warner-Jenkinson*

*Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17 (1997)(recognizing ensnarement as a

legal limitation on the doctrine of equivalents that bars an assertion of infringement

that would encompass, or 'ensnare' the prior art.) There is a reasonable probability

that four Justices will choose to review this decision or a reasonable possibility that five Justices will reverse the decision. The standard is met for stay of the mandate on this issue.

2. *Would proper review of the claim construction of the term "location" have prevented the successful abandonment of a flawed expert construction in favor a legally unfounded construction by GTT on appeal?*

The district court rejected all location-specific claim construction requests, determining that the term is unambiguous, well-understood and in no need of construction from the Court. GTT waived on appeal its position raised at trial that the term "location" was required to be within the vehicle. AE Br. p. 62. GTT clearly asserted that "location" does not mean "vehicle." AE Br. p. 62. This concedes STC's lengthy opposition to GTT's argument in favor of is expert's assertion by equivalents that transmitting vehicle data in the Emtrac System is by means of "wires." AE Br. pp. 56-61; JA1480-82. In response to KME's necessary claim construction analysis of the term "location," GTT abandoned its expert's equivalents position advanced at trial which sought to avoid the Morgan patent prior art reference. After abandoning the idea that "location" could or even must be in the vehicle, step (c) of the method Claim 16 of "transmitting the vehicle data" had the required meaning of a transmitting away from the vehicle.

The necessity of a proper claim construction of the term "location" as it is used throughout the specifications is clear and impacts the construction of Claim

16. Because of GTT's new construction of step (c) of Claim 16 to allow and even require transmission away from the vehicle, rather than within the vehicle as advanced by GTT's expert at trial, there is no Emtrac System structure available to perform the remaining steps of Claim 16. Construction of the term "location" as it is used throughout the specifications is vital to a proper understanding of the patent limitations.

The problem sought to be solved by the recent Supreme Court opinion in *Teva* is demonstrated by this Court's failure to construe the term as a matter of law and, alternatively, as requested by KME, to require a new trial to develop the facts that were preserved in the record but obviously not understood by the jury in light of the expert testimony relied upon by GTT.

This issue was carefully set forth in the joint briefing by STC, Inc. and KME and was the primary claim construction problem advanced by the defense at trial. This Court was provided alternative opportunities in light of *Teva* to review the vital claim construction as a matter of law in light of intrinsic evidence or under the clear error standard in light of the expert testimony provided by GTT. KME explained the importance of the "location" construction and suggested that a new trial may be necessary to develop facts if GTT's "wires" theory of transmission within the vehicle proved flawed. The theory was so thoroughly flawed that GTT abandoned it on appeal, leaving an inconsistent presentation of the claim

construction of the "location" term. If a proper standard had been applied, viewing only intrinsic evidence with *de novo* review, or reviewing the expert testimony under the clear error standard, then a consistent patent analysis would have been applied. KME clearly cited *Teva's* implications as it applies to this case in its Reply brief, filed shortly after *Teva* was announced, as follows:

> Because the judge in her claim construction determination did not resolve any factual issues and would have properly involved evidence intrinsic to the patent, *de novo* review is appropriate. *Teva Pharmaceuticals USA, Inc. v. Sandoz,* No. 13-854, ____S.Ct. ____, 2015 WL 232131. "GTT" essentially concedes Defendants' claim construction position, stating that "location" does not mean "vehicle." AE Br. p. 62-64.

KME Reply Br. p. 2. There is a reasonable probability that four Justices will choose to review this decision or a reasonable possibility that five Justices will reverse the decision. The standard is met for stay of the mandate on this issue.

   B. *Defendants will suffer irreparable harm if the mandate is not stayed pending a petition for writ of certiorari; a balance of the equities favors Defendants.*

   This Court's decision determining induced infringement of Claims 16 and 17 of the patent in suit involved money damages for past infringement of a patent that expired on January 7, 2015. Prior to trial, GTT did not request an injunction of Emtrac sales. The trial court judgement was entered well after that date, yet GTT has relentlessly sought since that time to force KME out of business. Its judgment enforcement efforts were focused upon freezing KME's assets rather than turnover

toward satisfaction of the moneys owed. Such maneuvers imposed an injunction, which was not awarded or sought in the district court and to which GTT is not entitled under patent law. Sale of the Emtrac System does not violate any current patent, even if this Court's judgment is not overturned on appeal.

The advice that would be given to a typical business under the current standard of legal care is largely governed by *Pennzoil Company v. Texaco, Inc.*, 481 U.S. 1 (1987). That case suggests in dictum that reorganization under the Bankruptcy Code is a viable option for a judgment debtor pending appeal. The *Pennzoil* majority did not address the merits of the due process argument raised there. All but one concurring opinion discussed how bankruptcy as an option to the judgment debtor to allow it to continue operations while the appeal was pending prevented a complete deprivation of a right to appeal. *Id.* at 32. The debtor had a liquidation value of $22 billion and a net worth of $23 billion. The judgment was in the amount of $11 billion. The discussion suggested that the debtor could file under Chapter 11 of the Bankruptcy Code to gain an automatic stay. If its appeal were successful the reorganization could be dismissed. The justices opined that it was unlikely that due process could have been violated in complete deprivation of a right to appeal in that case.

Whether due process is violated under the circumstances of this case in absence of a stay is an important question of federal law that should be settled by the

Supreme Court. KME and Morgan are not eligible for the reorganization

provisions of the Bankruptcy Code. Morgan Declaration. There is no means by

which they may continue to operate in business while the appeal is pending

without benefit of a stay. Morgan Declaration. Additionally, there are *in rem*

aspects to this case that deserve attention on appeal because the problematic

portion of the enforcement statute requires freezing of assets held by and not

claimed by third parties, prior to any notice or hearing to determine whether the

funds are subject to attachment. *See Connecticut v. Doehr,* 501 U.S. 1, 8 (1991);

*Snaidach v. Family Finance Corp. of Bay View,* 395 U.S. 337 (1969); *Mitchell v.*

*W.T. Grant Co.,* 416 U.S. 600 (1974). As Justice Blackmun indicated in his

*Pennzoil* concurrence, a meritorious due process claim could exist in a situation

amounting, as here, to a complete confiscation of property without due process.

GTT has generated a complicated procedural history in its enforcement efforts

against KME. After the temporary stay entered by this Court was lifted in August,

2014, D. 48, GTT registered its judgment in two Illinois state courts and served

citations to discover assets on several banks in which KME held accounts. Exhibit

A, B; D. 27. KME and STC each filed emergency motions to stay the citation

proceedings. Exhibits B, G. The Circuit Court for the Second Judicial Circuit,

Jefferson County, Illinois entered a stay of citation proceedings on that date.

Exhibit I. GTT filed a motion to lift the stay, Exhibit O, P, which was denied by

the Illinois court. Exhibit I. KME's motion to dismiss questioning the

constitutionality of the enforcement procedures, facially and as applied, is pending

in the state court. Exhibit J, K, L, M. After the state court responded to GTT's

motion to continue citations with an order vacating the citation hearing, Exhibit T,

U, I, GTT went to friendlier territory, seeking permission from the Minnesota

district to register its judgment in the Southern District of Illinois. Exhibit Q, R.

KME was served with notice of a citation to discover assets served on STC, Inc. on

December 23, 2014.  The stay was continued in the Illinois court at a hearing held

in March, 2015 after GTT filed a motion to extend the citations there. Exhibit I.

Beginning on December 23, 2015 until a June 2, 2015 order stayed the federal

proceedings, KME's only source of operating capital[1] was frozen by the unstayed

citations filed in the federal court.

---

[1]The federal proceedings froze KME's accounts receivable held by STC, Inc. STC,
Inc. is the manufacturer of the Emtrac product, which is marketed and distributed
by KME. Moneys are paid by purchasers to STC, Inc. STC, Inc. in turn is
contracted to pay KME a commission of 27% after the product is manufactured
and shipped and after payment from the customer is received. Any moneys
received by STC, Inc. for sales made by KME have been frozen and unavailable to
KME since December 23, 2014, when the citations were served on STC. KME
stopped making sales in light of the freeze and also in light of the February 20,
2015 federal citation served on a bank which formerly held deposits of KME.
KME has not held a bank account since the asset freeze was put in place.  Morgan
Declaration.

In Illinois, civil judgments are enforced through supplementary proceedings pursuant to 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277. Illinois allows a judgment creditor to pursue assets or income of the judgment debtor by instituting citation proceedings against the judgment debtor and/or a third party. 735 ILCS 5/2-1402(a). Under the statute, bank accounts and accounts receivable are frozen upon service of the citation to discover assets to a third party prior to any hearing. Further, a lien is created by proper service of a citation to discover assets that "binds the nonexempt personal property, including money, choses in action, and effects of the judgment debtor…" 735 ILCS 5/2-1402(m)(2). Currently, the denial of the motion to dismiss filed by KME in the Southern District of Illinois alleging that federal statutory and common law, as well as due process concerns, require observance of the stay imposed in state court is on appeal before the Seventh Circuit, pending a decision on whether the court has jurisdiction.

Irreparable harm will result if a stay of the mandate is denied because the scope of the state court stay likely does not extend beyond the mandate of this Court. Once the mandate issues, GTT will seek relief from the stay of enforcement proceedings currently in place in the Southern Illinois district. On August 10, 2015, GTT sent a lengthy letter to KME's counsel demanding payment of the money judgment. Morgan Declaration. As exhibited by past experience, GTT's likely goal, however, is to freeze KME's assets in an effort to thwart its operations rather

than to seek turnover of money in satisfaction of its judgment. Forcing KME out of business is beyond the scope of the relief granted by the district court. Because KME's assets have no known value, Morgan Declaration, the effect would be punitive and anticompetitive rather than a lawful enforcement measure, especially pending a viable appeal.

In addition, it is important to understand that KME is in ongoing negotiations with three potential investors who have expressed willingness to pay the entire amount of the judgment owed in this case. Morgan Declaration. Denial of a stay of the mandate will impair the negotiations and force KME out of business, making payment of the judgment impossible. Morgan Declaration. If this Court grants a stay pending petition for writ of certiorari, time will be allowed to complete the negotiation process with the investors and provide the relief mandated by this Court. Once paid to KME, the judgment amount will be paid in the form of a cash bond until the appellate process is completed. Morgan Declaration. Absent the stay requested here, it is likely that KME will be forced out of business by GTT's aggressive enforcement efforts which will frustrate the stated goal of the original litigation and this Court's intended mandate. A stay will preserve the fruits of the appeal, which is the monetary relief requested, and will also preserve KME's due process rights while its appellate efforts continue.

## CONCLUSION

Wherefore, KME and Morgan respectfully requests that this Court allow Motion to Stay the Mandate Pending Petition for Writ of Certiorari.

Dated: August 13, 2015.

Respectfully submitted,

 /s/Jana Rine

_____
Jana Yocom, P.C
Jana Yocom Rine (#6193677)
320 S. 11th, Suite 1
Mount Vernon, Illinois 62864
618-731-1944

*Attorney for Defendants*
*KM Enterprises, Inc., and*
*Rodney Kris Morgan*

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing document with the Clerk of the United States District Court for the Federal Circuit and served a copy on counsel of record via the CM/EFC system on August 13, 2015.

/s/ Jana Yocom Rine

_____

Law Firm:          Jana Yocom, P.C.
Address:           320 S. 11th, Suite 1
City, State, Zip:  Mount Vernon, Illinois 62864
Telephone:         618-731-1944
Facsimile:         618-244-0697
Email:             jana.yocom@gmail.com

Dated: August 13, 2015.